MIEDZINSKI, Sheriff et al. *v.* LANDMAN et al.

[No. 129, September Term, 1958.]

4

*Decided October 15, 1958.*

*Motion by appellees for recall and stay of mandate or stay of its effect, filed October 20, 1958, denied October 21, 1958.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*James H. Norris, Jr., Special Assistant Attorney General,* and *Stedman Prescott, Jr., Deputy Attorney General,* with whom was *C. Ferdinand Sybert, Attorney General,* on the brief, for the appellants.

*William O. E. Sterling* and *Paul J. Bailey,* with whom was *George Mason* on the brief, for the appellees.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court for St. Mary's County filed July 21, 1958, declaring Chapter 18 of the Acts of 1958 to be unconstitutional and enjoining the appellants from enforcing the law. The bill was filed on May 21, 1958, before the Act took effect according to its terms on June 1, 1958. An answer was filed on May 28 and the

case set for hearing upon bill, answer, exhibits and stipulation, on June 13, 1958. By agreement of counsel on May 29, 1958, a restraining order was signed until the case should be finally determined by the court below. We advanced the case for argument at the beginning of the new term. Neither in the lower court nor in this Court was any question raised as to the standing of the appellees to raise the questions presented by a bill in equity for a declaratory decree, and we shall assume for present purposes that they had such standing.

The principal question presented, and the question that was thought to be determinative by the court below, is whether the Act was passed in violation of the Maryland Constitution, Art. III, Sec. 15. That section, ratified November 2, 1948, provides, in part, that in the "thirty-day sessions in even years, the General Assembly shall consider no bills other than (1) Bills having to do with budgetary, revenue and financial matters of the State Government, (2) legislation dealing with an acute emergency, and (3) legislation in the general public welfare." Chapter 18 undertook to add a new section to Art. 27 of the Code, reading as follows:

"246A. (a) It shall be unlawful for any person, firm, association or corporation to bet, wage or gamble at or to keep, conduct, maintain or operate any game of chance, gaming table or coin-operated gambling machine or device upon any vessel upon any of the waters within the State of Maryland, or upon any pier, wharf, building or other structure of any kind whatsoever which is built upon or over any of the waters of this State and which pier, wharf, building or other structure cannot be entered from the shore of the State of Maryland by a person on foot, and it shall further be unlawful for any person, firm, association or corporation to establish, keep, rent, use or occupy, or knowingly suffer to be established, kept, rented, used or occupied, any vessel upon any of the waters of the State of Maryland, or any pier, wharf, building or other structure of any kind whatsoever which is built upon or over any of the waters of this State and which cannot be entered from the shore of the State of Maryland by a person on foot, for the purpose of conducting, maintaining or operating any game of chance, gaming table or coin-op-

erated gambling machine or device. This Section shall prevail despite the issue of any form of license or permit granted through or by any county, municipal corporation or other political subdivision of this State. Any person, firm, association or corporation violating the provisions of this Section shall be deemed guilty of a misdemeanor and upon conviction thereof shall be subject to a fine of not less than Two Hundred Dollars ($200.), or more than One Thousand Dollars ($1,000.), or imprisonment not to exceed one year for each such violation or may be both fined and imprisoned in the discretion of the court.

"(b) Nothing in this Section shall be construed to authorize the doing of any act which is otherwise prohibited by law." Section 2 of the Act repealed inconsistent laws.

The complainants, appellees, are the owners and operators of taverns and restaurants located on piers or wharves extending from the Virginia shore out into the Potomac River, except that one of the complainants owns and operates a similar establishment on a vessel moored in the Potomac near the Virginia shore. The respondents are the Sheriffs of St. Mary's and Charles Counties. Each of the complainants holds a license permitting the operation of gaming devices, commonly known as slot machines, in their respective establishments, pursuant to local laws of St. Mary's and Charles Counties, respectively. These licenses purported to be valid for one year from May 1, 1958, but at the time they were obtained Chapter 18 had been passed and approved by the Governor on March 6, 1958. It is conceded that these places of business are located in the State of Maryland and in St. Mary's and Charles Counties, respectively, although access is gained by piers extending from the Commonwealth of Virginia across the State line, which was long since established at the low water mark of the river on the Virginia side. Virginia law does not permit the operation of the gaming devices which are lawful when properly licensed in St. Mary's and Charles Counties. As pointed out by the court below, the complainants' establishments are extensively patronized by Virginia residents and others who resort thereto from the Commonwealth, but there is substantial sentiment

in Virginia opposing the conduct of places of business adjacent to the Virginia line which permit gaming devices not lawful in that State. The lower court also noted that the Governor of Maryland recommended to the General Assembly the passage of the legislation in question, upon the formal request of the Governor of Virginia.

The appellees contend that although the Act in question is in the form of a public general law applicable to the entire State, its impact is wholly local, and hence it cannot be deemed to be in the "general public welfare". They strongly rely upon the case of *Funk v. Mullan Contracting Co.*, 197 Md. 192, where this Court invalidated Chapter 30 of the Acts of 1950 setting up a commission to fix the generally prevailing wages which were required to be paid by contractors for the construction of buildings, roads or bridges for the State. However, the Act did not repeal, but left in effect, a previous Act applicable in three counties only, where the prevailing wages in road contracts were to be those predetermined by the United States Department of Labor. The Court pointed out that Chapter 30 was therefore applicable to Baltimore City and twenty of the twenty-three counties, but in the other three, the Commission created by that Act had no authority over wages to be paid for State road work.

The Court referred to the fact that the plethora of local measures considered by the Legislature had in the past impeded the proper consideration of State-wide measures, and found that the Legislature, in using the word "general" in the new amendment, meant to restrict itself in the even-year sessions "to matters generally affecting the State, rather than affecting parts thereof." But it was also said (p. 199) : "We are not required on this record to determine whether acts covering subjects of interest and importance to the entire State, and by their terms applicable thereto, might not be legislation in the general public welfare, even though their actual geographical impact is upon parts of the State only. We have here no such situation." In the light of this qualification, we think the holding was that generality was destroyed by the fact that Chapter 30, in effect, exempted three counties from its operation, not merely by the fact that it had

a limited geographical impact. This conclusion is somewhat reinforced by the statement in *Wash. Sub. San. Comm. v. Buckley,* 197 Md. 203, 207, decided the same day, where it was said: "It cannot be successfully contended that a purely local statute, affecting only parts of two counties, and having no application, either financial or otherwise, to any other part of the State, can be in the general public welfare", and by the further statement in the *Funk* case (p. 201) that "the term 'general', as used in Sec. 15 of Article III of the Constitution, is intended to mean legislation that applies to all of the State without exception."

In the instant case Chapter 18 is in terms applicable to the entire State and no political subdivision is exempted from its operation. The fact that its geographical impact is limited by the conditions to which it applies would not seem to destroy its generality. The language of Chapter 18 that limits its application to "any vessel upon any of the waters within the State of Maryland," and to piers built "upon or over any of the waters of this State and which cannot be entered from the shore of the State of Maryland by a person on foot," would seem to include all waters, whether tidal waters or lakes or ponds, which probably exist in every political subdivision in the State. We have no doubt that "shore" refers to any land mass within the State. On the other hand, it seems clear that persons crossing the Virginia line on foot on the south side of the Potomac at low-water mark would not be entering from the Maryland "shore". While the particular impact is upon those establishments located along the south side of the Potomac, its applicability is not limited to that area and it might be invoked against gambling devices on vessels or structures in any waters of the State, even if no such establishments are presently in existence.

The argument that the impact is wholly local seems to rest primarily on the fact that, except in Anne Arundel, St. Mary's, Charles and Calvert Counties, where local laws permit the operation of slot machines, gambling devices of all types are prohibited under Code (1957), Art. 27, Sec. 237. But we think the existence of another law on the subject does not preclude the passage of a new Act of somewhat different

scope and carrying heavier penalties than those provided in Sec. 241. For an illustration of separate and distinct offenses covering the same or similar subject matter, see *Willis v. State,* 205 Md. 118, 125, and *Lyman v. State,* 136 Md. 40, 50, where it was held that a prosecution might lie either under the False Pretense Act or the Worthless Check Act. Whether Chapter 18 operates as a repeal *pro tanto* of some of the duplicated provisions of Section 237 is a question we need not now consider. We think a prosecution under Chapter 18 would lie in any political subdivision in which the prohibited activities are found to exist, even though the State may have a choice of remedies.

The lower court thought Chapter 18 was invalidly passed at the even-year session, not only because such activities were already prohibited in all except the four counties mentioned, but also because it did not affect the welfare of the rest of the State. But this overlooks the fact that the Act was adopted chiefly for reasons of comity. The lower court noted that the Governor of this State recommended its passage in compliance with a request by the Virginia authorities. It cannot fairly be said that the maintenance of neighborly relations with an adjoining State is not a matter of interest or concern to the entire State, and we think the action of the Legislature in adopting a measure designed to remove a source of interstate controversy or annoyance may be considered as promoting the general public welfare of the entire State. We think an Act in the nature of a compact could be passed at an even-year session, no matter how limited its actual effect upon particular areas or persons in the State We note that the Middle Atlantic Interstate Forest Fire Protection Compact, for example, was adopted by Chapter 126 of the Acts of 1956.

The appellees contend that the limited practical and geographical impact of Chapter 18 amounts to a discrimination against them, and that the classification is so arbitrary and unreasonable as to deny them the equal protection of the law guaranteed by the Fourteenth Amendment to the Federal Constitution. But to meet the test, an Act need not be territorially uniform. It is enough if the law applies equally to

all persons similarly situated within the territory described in the Act. *Salsburg v. State,* 201 Md. 212, 221, aff'd 346 U. S. 545; *Barton v. Public Ser. Comm.,* 214 Md. 359, 363. The State has plenary power to regulate or forbid gambling, and "Reasonableness depends on the character or nature of the conditions to be met or overcome." *Maryland Racing Comm. v. McGee,* 212 Md. 69, 76. The appellees argue that it was unreasonable for the Legislature to draw a distinction between places of business on the mainland of St. Mary's and Charles Counties, or on piers adjacent thereto, and piers on the opposite side of the river adjacent to the Virginia shore. But we agree with the lower court that "The fact that the latter locations are more difficult to police or that they infringe upon the policies of the neighboring Commonwealth of Virginia would seem to afford an adequate basis for different classification."

The appellees contend that the language of the Act is so vague and uncertain as to violate the Fourteenth Amendment. We find it unnecessary in this case to resolve all the fancied ambiguities in the Act. "We have repeatedly held that the general rule of the construction of a statute is that every presumption favors its validity and reasonable doubt is enough to sustain. This Court is very reluctant to defeat the will of the Legislature by declaring its legislation void, if, by any construction, it can possibly be maintained." *Hellmann v. Collier,* 217 Md. 93, 95. This is particularly true where, as here, the attack is general and not centered upon the application of the Act to an individual charged with a specified criminal act that might call for construction under the facts presented. We think the words of the statute fix an ascertainable standard of guilt and are not so vague as to leave a person of ordinary intelligence in doubt as to the nature of the acts condemned. Cf. *Glickfield v. State,* 203 Md. 400, and *Blake v. State,* 210 Md. 459.

Since we disagree with the lower court in its holding that Chapter 18 violated Sec. 15, Art. III, of the Maryland Constitution, we must reverse the decree and restraining order appealed from, and we direct the Clerk of this Court to trans-

12

mit the mandate forthwith, under Rule 876 b of the Maryland Rules, for the passage of a decree declaring Chapter 18 to be constitutional and valid.

> *Decree reversed and case remanded, costs to be paid by the appellees.*