POLICE COMMISSIONER OF BALTIMORE CITY ET AL. *v.* SIEGEL ENTERPRISES, INC., ETC.

[No. 243, September Term, 1959.]

112

114

*Decided July 1, 1960.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*James H. Norris, Jr., Special Assistant Attorney General,* with whom was *C. Ferdinand Sybert, Attorney General,* on the brief, for the appellants.

*Cornelius P. Mundy,* with whom were *William Greenfeld, Martin B. Greenfeld* and *Albert B. Polovoy* on the brief, for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

A large portion of the opinion of Judge Oppenheimer, who sat below, will be quoted, and adopted as the major part of the opinion of this Court. Judge Oppenheimer stated:

"The plaintiff, the owner of two newsstands and bookstores in Baltimore, asks that the Crime Comic Books Act of Maryland (Code, 1957, Article 27, Sections 420-425, as amended by Chapter 197 of the Acts of 1959) be declared unconstitutional and that the defendants, charged with the enforcement of the criminal laws of this State in the City of Baltimore, be enjoined from enforcing that act. The stipulation filed in the proceedings shows that, if the act is constitutional, the plaintiff would be subject to prosecution under its provisions, and if found guilty would be punishable by fine or imprisonment not exceeding one year, or both. The petition is filed under the Uniform Declaratory Judgment Act, Code, 1957, Article 31A, which provides that any person whose rights are affected by a statute may have the court determine any question of its construction or validity. *Davis v. State,* 183 Md. 385, 37 A. 2d 880.

"The act whose constitutionality is in issue is in the part of Article 27 of the Code entitled 'Obscene

and Other Objectionable Publications'. Section 417 deals with the publication of a newspaper or other periodical which contains 'any obscene or licentious matter'. Section 418 prohibits the sale, exhibition and advertisement of lewd, obscene and indecent books, magazines, newspapers and other publications. Section 419 prohibits the sale or exhibition to minors of publications principally made up of news or pictures of accounts of criminal news, or deeds of bloodshed, lust or crime; and Section 419B makes it unlawful to exhibit a motion picture film to a minor under the age of eighteen which, for such minor, would be obscene, indecent or immoral, or which would tend to corrupt the morals of such minor. Section 419 was held unconstitutional in a decision of the Criminal Court of Baltimore City from which there was no appeal.[1] Neither the validity of that section nor the constitutionality of Sections 417, 418 and 419B is here in controversy.[2]

"Section 420 sets forth legislative findings and intent to the effect that children below the age of eighteen 'are or may be incited to commit certain crimes' in good part through the influence of the crime comic books of the kind referred to in the following section.[3] Subsection 421 (a) makes it unlawful to sell or distribute to or permit the perusal by any child below the age of eighteen years of any book, pamphlet, magazine or other printed paper principally comprised of pictures, including comic books, devoted to the publication and exploitation of actual or fictional deeds of violent bloodshed, lust or immorality or which, for a child below the age of eighteen, are obscene, lewd, lascivious, filthy, inde-

---

1. State v. Stien (March 17, 1957), Byrnes, J. Judge Byrnes held Section 419 unconstitutional because of its vague and indefinite language on the authority of Winters v. New York, 333 U. S. 507.

2. The plaintiff does not concede but does not contest the validity of Sections 417 and 418.

3. [This footnote contained the full text of Section 420.]

cent or disgusting and so presented as reasonably
to tend to incite such a child to violence or depraved
or immoral acts against the person. Subsection (b)
is similar in content and form, but is not limited to
material principally composed of pictures and in-
cludes publications 'devoted to the publication and
exploitation of sex or of matter of an indecent char-
acter'. Subsection (c) sets forth a presumption as
to employment of the persons found violating the
provisions of (a) and (b) and, of itself, is not here
attacked. Subsection (d) makes it unlawful for any
person operating a newsstand or book store to ex-
hibit upon any public street or highway or in any
other place within view of children below the age of
eighteen passing upon such street or highway any of
the books or publications referred to in subsections
(a) and (b).[4]

---

4. Section 421, as amended in 1959, reads as follows:
  " 'Section 421. Sale, etc., of certain publications to minors
prohibited.
  " '(a) *Crime, etc., books prohibited.*—It shall be unlawful and
an offense for any person operating any newsstand, book store,
drugstore, market, or other mercantile establishment to wil-
fully sell or distribute to any child below the age of eighteen
years, or permit the perusal of by any such child, or have in
his possession with intent to sell, distribute or otherwise offer
for sale or distribution to any such child, any book, pamphlet,
magazine or other printed paper principally composed of pic-
tures and specifically including but not limited to comic books,
devoted to the publication and exploitation of actual or fic-
tional deeds of violent bloodshed, lust or immorality, or which,
for a child below the age of eighteen years, are obscene, lewd,
lascivious, filthy, indecent or disgusting and so presented as
reasonably to tend to incite a child below the age of eighteen
years to violence or depraved or immoral acts against the per-
son.
  " '(b) *Sale, etc., of indecent, lewd, etc., publications to minors.*—
It shall be unlawful and an offense for any person operating
any newsstand, book store, drugstore, market, or other mer-
cantile establishment to wilfully sell or distribute to any child
below the age of eighteen years, or permit the perusal of by

"Section 423, entitled 'News account not included', reads as follows:

" 'This subheading shall not be construed to apply to those accounts of crime which are part of the ordinary and general dissemination of news appearing in publications which are published not less frequently than once a week, nor to such drawings and photographs as are used to illustrate such accounts.' "

"Section 425 contains severability provisions.

"The plaintiff contends that the Maryland act, particularly Section 421 (a), (b) and (d), constitutes an abridgment of the freedom of the press and a denial of due process of law and the equal protection of the laws under the First and Fourteenth Amendments to the Constitution of the United States and Articles 23 and 40 of the Declaration of Rights of Maryland. The State urges that the act constitutes a valid exercise of the police power to protect

---

any such child, or have in his possession with intent to sell, distribute or otherwise offer for sale to any such child any book, pamphlet, magazine or other printed paper, specifically including but not limited to comic books, devoted to the publication and exploitation of sex or of matter of an indecent character which, for a child below the age of eighteen years, is obscene, lewd, lascivious, filthy, indecent or disgusting or which are devoted to the publication and exploitation of actual or fictional deeds of violent bloodshed, lust, or immorality which are so presented as reasonably to tend to incite such child below the age of eighteen years to violence or depraved or immoral acts against the person.
* * *
" '(d) *Exhibition of prohibited publications on streets, etc.*—It shall be unlawful and an offense for any person operating any newsstand, book store, drugstore, market, or other mercantile establishment to exhibit upon any public street or highway or in any other place within view of children below the age of eighteen years passing upon any such street or highway any book, pamphlet, magazine or other printed paper, prohibited and made unlawful by subsections (a) and (b) of this section.
* * *

juveniles against objectionable and obscene material and to prevent crimes.

"Article 40 of the Maryland Declaration of Rights states that 'the liberty of the press ought to be inviolably preserved; that every citizen of the State ought to be allowed to speak, write and publish his sentiments on all subjects, being responsible for the abuse of that privilege'. Through the medium of the Fourteenth Amendment, the States as well as Congress are proscribed from enacting any laws abridging the freedom of speech or of the press. *Near v. Minnesota,* 283 U. S. 697, 707; *Baltimore v. A. S. Abell Co.,* 218 Md. 273, 284, 145 A. 2d 111. That amendment exacts from the States all that is 'implicit in the concept of ordered liberty' basic to a free society. *Winters v. New York,* 333 U. S. 507; *Wolf v. Colorado,* 338 U. S. 25. The liberty of the press applies to pamphlets, magazines and periodicals as well as to newspapers. *Lovell v. City of Griffin,* 303 U. S. 444; *Howard Sports Daily, Inc. v. Public Service Commission,* 179 Md. 355, 361, 18 A. 2d 210. It covers distribution as well as publication. *Winters v. New York, supra; Lovell v. Griffin, supra.*

"But the guarantees of free speech and of a free press, fundamental as they are, give no absolute protection for any utterance or publication. The liberties which the Constitution protects can exist only in a society strong enough to ensure the freedom of the individual. 'The most stringent protection of free speech would not protect a man in falsely shouting fire in a theatre and causing a panic.' Holmes, J., *Schenck v. United States,* 249 U. S. 47, 52. The Smith Act, making it unlawful to advocate or teach the overthrow of the government by force or violence, when intent is proved, does not violate the First Amendment. *Dennis v. U. S.,* 341 U. S. 494. Libellous statements are not within the area of constitutionally protected utterance. *Beauharnais v. Illinois,* 343 U. S. 250; *Negley v. Farrow,* 60 Md. 158. Nor is

obscenity within the area of free speech and press upon which Congress and the States cannot infringe. *Roth v. United States,* 354 U. S. 476.

"The Due Process Clause of the Fourteenth Amendment protects persons under eighteen as well as adults. *Yick Wo v. Hopkins,* 118 U. S. 356. The right of young persons to read what they will, within the limits of permissible State or Federal action, is vital not only to them but to all our citizenry. The exclusion of obscenity from protected utterance does not carry with it the right to obscure from young or old facts or events, however unpleasant, disturbing or violent.[5] It is through realization, in formative years, of the meaning of the ordered liberties protected by the Constitution that an adult citizenry is most apt to have the feelings and thoughts and to take the actions which are 'the real protection against attempts to strait-jacket the human mind.' Mr. Justice Frankfurter, concurring, *Dennis v. United States,* 341 U. S. 494, 556; see *Thornhill v. Alabama,* 310 U. S. 88, 95.

"Confluent with these principles is the right of a state to protect itself against crime. Protection against crime includes proper attempts to. prevent it, and, as the statement of legislative findings which precedes Section 421 of the Maryland act shows, the endeavor to minimize juvenile delinquency was one of the operative causes in the passage of the legislation. There are limited areas in which state action may, under proper safeguards, encroach upon the constitutional guarantees, because of the greater interests of public order and safety involved. *Roth v. United States, supra,* 354 U. S. at page 484. The

---

5. "Before he was eighteen, while a student at King's College, Alexander Hamilton published a defense of the violent resistance to the British tax on tea. His 'Defense of the Destruction of the Tea', written at the age of seventeen, was his first contribution to the colonists' cause. Nathan Schachner, 'Alexander Hamilton', Chapter III."

Assembly's declaration of the State's policy in these areas is to be regarded with the respect due the deliberations and actions of the legislative branch of our government. However, when a statute interferes with rights of free expression and publication, courts are under the duty to determine whether the interference, in the form it takes, is necessary to prevent encroachment upon more important interests. In this determination, if the act is an unconstitutional abridgment of the liberties guaranteed by the Fourteenth Amendment, it is immaterial that the encroachment was not intended or was enacted for other motives. *Baltimore v. A. S. Abell Co., supra,* 218 Md. 273, 289, 145 A. 2d 111; *National Association for Advancement of Colored People v. Alabama,* 357 U. S. 449. The issues presented in this case are to be adjudicated within the frame of these principles.

"In *Winters v. New York, supra,* the appellant was a New York City book dealer who had been convicted of a misdemeanor for having in his possession with intent to sell certain magazines charged to violate a New York statute. The statute forbade the publishing or display of 'any book, pamphlet, magazine, newspaper or other printed paper devoted to the publication, and principally made up of criminal news, police reports, or accounts of criminal deeds, or pictures, or stories of deeds of bloodshed, lust or crime.' The New York Court of Appeals, in affirming the conviction, construed the statute to be applicable only to 'publications that, besides meeting the other particulars of the statute, so massed their collection of pictures and stories of bloodshed and of lust 'as to become vehicles for inciting violent and depraved crimes against the person.' The Supreme Court held that this interpretation by the Court of Appeals 'put these words in the statute as definitely as if it had been so amended by the legislature'. The Supreme Court reversed the conviction, three justices dissenting.

"The majority opinion stated:

"'We recognize the importance of the exercise of a state's police power to minimize all incentives to crime, particularly in the field of sanguinary or salacious publications with their stimulation of juvenile delinquency. * * *

"'This Court goes far to uphold state statutes that deal with offenses, difficult to define, when they are not entwined with limitations on free expression. * * *'

"The Court found, however, the specification of publications prohibited from distribution too uncertain and indefinite to justify the conviction of the petitioner. The majority opinion said:

"'Even though all detective tales and treatises on criminology are not forbidden, and though publications made up of criminal deeds not characterized by bloodshed or lust are omitted from the interpretation of the Court of Appeals, we think fair use of collections of pictures and stories would be interdicted because of the utter impossibility of the actor or the trier to know where this new standard of guilt would draw the line between the allowable and the forbidden publications. * * *

"'The statute as construed by the Court of Appeals does not limit punishment to the indecent and obscene, as formerly understood. When stories of deeds of bloodshed, such as many in the accrued magazines, are massed so as to incite to violent crimes, the statute is violated. It does not seem to us that an honest distributor of publications could know when he might be held to have ignored such a prohibition. Collections of tales of war horrors, otherwise unexceptionable, might well be found to be "massed" so as to become "vehicles for inciting violent and depraved crimes". Where a statute is so vague as to make criminal an innocent act, a conviction under it cannot be sustained. *Herndon v.*

*Lowry,* 301 U. S. 242, 259, 81 L. Ed. 1066, 1075, 57 S. Ct. 732.'

*"Smith v. California,* 80 S. Ct. 215, 4 L. Ed. 2d 205, held unconstitutional a Los Angeles ordinance imposing criminal responsibility on a book seller if an obscene book is found in his shop, even though there is no element of knowledge on his part.[6]  In delivering the opinion of the Court, Mr. Justice Brennan cited *Winters v. New York* as intimating that:

" '. . . stricter standards of permissible statutory vagueness may be applied to a statute having a potentially inhibiting effect on speech; a man may the less be required to act at his peril here, because the free dissemination of ideas may be the loser.'

"Both subsections (a) and (b) of Section 421 of the Maryland act, in my opinion, make the specification of publications prohibited from distribution as uncertain and indefinite as did the New York statute which the Supreme Court held unconstitutional in *Winters v. New York.* The New York statute, as interpreted by the New York Court of Appeals, was applicable to publications principally made up ,of criminal news or accounts of criminal deeds or stories of deeds of bloodshed, lust or crime, so massed as to become vehicles for inciting violent and depraved crimes against the person. The Maryland

6. "Subsections (a) and (b) of Section 421 of the Maryland Act require that the prohibited acts be done 'wilfully'. It was because of the absence of a scienter requirement in the California act that the statute was held unconstitutional. Subsection (d) of the Maryland act, dealing with the exhibition of the prohibited publications on or visible from streets, does not contain the word 'wilfully', but it refers to the publications made unlawful by subsections (a) and (b) whose display, under those subsections, must be wilful to be unlawful. Under the principle of statutory construction that, where there can be two interpretations, by one of which the act would be unconstitutional and by the other valid, the latter construction is to be adopted. Miedzinski v. Landman, 218 Md. 3, 145 A. 2d 220, the provisions of subsection (d) may be read as inferring that the prohibited display must be wilful [in testing its validity].

act includes, although it is not limited to, such publications; the standard as to all the publications it interdicts is that the material is 'so presented as reasonably to tend to incite a child below the age of eighteen years to violence or depraved or immoral acts against the person.' This is the same standard which the Supreme Court found so vague and indefinite that an honest distributor of publications could not know when he might be held to have ignored the prohibition.

"The defendants seek to distinguish the *Winters* case on the ground that, unlike the New York statute, the Maryland act includes publications which for one below eighteen are obscene, lewd, lascivious, filthy, indecent or disgusting. The same indefinite standard of reasonable incitement to violence or immoral acts applies to these publications as to those which, like the ones covered by the New York statute, deal with deeds or stories of bloodshed, lust or crime. Even though obscene publications, properly defined, may be interdicted, their inclusion with other publications within a periphery too vaguely drawn to provide fair ascertainable standards of guilt only enlarges the area within which innocent acts may be made criminal and the free dissemination of ideas adversely and unwarrantably affected.

"The Maryland act is limited to publications which tend to incite a person below eighteen years while the New York statute contains no such restriction, but both the majority and minority opinions in the *Winters* case recognize that a principal purpose of the New York statute was the protection of minors. The indefiniteness which the *Winters* decision held fatal goes to the nature of the prohibited publications and of the conduct which may be held to be criminal.

"The defendants contend further that subsection (b) of Section 421 differs from the New York statute because, in addition to other publications, it

includes those devoted to the publication and exploitation of sex. Here again, the same indefinite standard applies. Moreover, as the Supreme Court pointed out in *Roth v. United States, supra,* sex and obscenity are not synonymous.[7] The term 'publication and exploitation of sex' injects another element of indefiniteness in an area in which freedom of speech and of the press are at stake. See Lockhart and McClure, 'Literature, The Law of Obscenity, and the Constitution,' 38 Minn. L. Rev. 295.

"In his dissenting opinion in *Winters v. New York,* Mr. Justice Frankfurter included the Maryland act now codified as Article 27, Section 419, Code, 1957, as one of the statutes that fell by the decision. 333 U. S. at page 522. That section, which another Baltimore court has held unconstitutional,[8] contains virtually the same language as that of the New York statute, except that the prohibited sale, distribution and display is limited to minors. It does not contain the reasonable incitement standard of Section 421 which was passed after the *Winters* case. In that decision, the majority opinion held that the New York statute on its face, without the authoritative limitation of the Court of Appeals construction, would have been void because it included 'prohibition of acts fairly within the protection of a free press.' 333 U. S. at page 512. The interpretation of the New York Court of Appeals, held by the Supreme Court to have put the restrictive words in the statute to the same extent as if done by the Legislature itself, had only the limiting effect of the in-

---

7. " 'Obscene material is material which deals with sex in a manner appealing to prurient interest. The portrayal of sex, e.g., in art, literature and scientific works, is not itself sufficient reason to deny material the constitutional protection of freedom of speech and press. Sex, a great and mysterious motive force in human life, has indisputably been a subject of absorbing interest to mankind through the ages; it is one of the vital problems of human interest and public concern.' Roth v. United States, 354 U. S. 476, 487.

8. "See note 1, *supra.*

citement standard of Section 421 (a) and (b) and that limitation, the Supreme Court held, was not sufficient to make the act constitutional.

"The constitutionality of the Washington comic book act was before the Supreme Court of that state in an action for a declaratory judgment. *Adams v. Hinkle*, 51 Wash. 2d 878, 322 P. 2d 844. While, unlike the Maryland act, the Washington statute made it a criminal offense to sell comic books without a license and so involved prior restraint, Sections 7 and 9 made illegal the sale and display to minors under eighteen of comic books 'devoted to the publication or exploitation of fictional or actual deeds of violent bloodshed, lust, crime or immorality * * * so massed as reasonably to tend to incite minors to violence or depraved or immoral acts against the person.' No prior restraint was involved in these sections, the terms of which, as to standards, are closely similar to subsections (a) and (b) of Section 421 of the Maryland act. The Washington court passed upon all the constitutional questions involved and held the entire act, including Sections 7 and 9, unconstitutional. It held that those sections could not be differentiated from the act held invalid in *Winters v. New York*, and, under that decision, were so vague and indefinite as to violate procedural due process.

"Subsections (a) and (b) of Section 421 of the Maryland act, in my opinion, fall under the Supreme Court's condemnation of the New York statute in the *Winters* case; they fail to meet the due process requirements of Article 23 of the Maryland Declaration of Rights and of the Fourteenth Amendment in that they do not give fair notice of what acts will be punished, and permit within the scope of their language the punishment of acts protected by the principles of freedom of the press.

"Subsection (d) of Section 421 prohibits the display of any of the publications made unlawful by

subsections (a) and (b) upon any public street or highway or in any other place within the view of children below the age of eighteen years. Unlike subsections (a) and (b), this subsection directly affects adults, for, under it, they are not permitted to see publications which as to them are not unlawful.

"In *Butler v. Michigan*, 352 U. S. 380, the Supreme Court unanimously held unconstitutional a Michigan statute making it an offense to publish, sell or exhibit any publication containing obscene, immoral or lewd material tending to incite minors to violent or immoral acts. The Court said, at pages 383, 384:

" 'The incidence of this enactment is to reduce the adult population of Michigan to reading only what is fit for children. It thereby arbitrarily curtails one of those liberties of the individual, now enshrined in the Due Process Clause of the Fourteenth Amendment, that history has attested as the indispensable conditions for the maintenance and progress of a free society.'

"The defendants contend that the display of books and other publications on the public streets and highways is under a privilege and not a right. The subsection goes beyond regulation of the public ways; it forbids the display of books and other publications in any place within the view of children under eighteen passing on a street. Under this language, a book seller is not permitted to show in the window of his own property a publication which he has the right to sell to any person over eighteen, and adults are not allowed to see the books which it is their right to buy and read. The arbitrary curtailment of constitutional liberties is clear.

"The subsection is invalid apart from this provision. The publications here involved concededly are ones which for adults are within the orbit of constitutionally protected freedom. The maintenance of

order, the prevention of riots, misuse, and littering of the public streets are necessary functions of governmental authority. But protection of the public. peace and of the primary uses for which highways exist cannot be made a subterfuge for infringement of the basic constitutional rights which all our governments must preserve. Public interest in keeping clear the streets of the community cannot validate prohibiting the dissemination of information by handbills; an ordinance enacting such a prohibition was held unconstitutional as striking 'at the very foundation of the freedom of the press.' *Lovell v. Griffin, supra.* Preservation of the peace of public parks cannot serve as a cover for suppressing the orderly espousal of religious views. *Niemotko v. Maryland,* 340 U. S. 268. Sound trucks on streets are subject to reasonable regulation, *Kovacs v. Cooper,* 336 U. S. 77, but a requirement of permits for meetings on public grounds cannot be made a device for the suppression of free expression. *Hague v. C. I. O.,* 307 U. S. 496.

"Kiosks and newsstands conceivably could be prohibited in an oblation to the snarls of traffic, but unless and until they are, the publications they display cannot be censored on the sole basis that public ground is occupied. In the Athenian Agora and the Roman Forum, on the London streets and colonial village greens, the public ways and gathering places, men learned the strength and wisdom of free discussion. Under our Constitution, the liberties of speech and press are not privileges but rights. It was the power of the licensor against which the struggle for the freedom of the press was primarily directed. Subsection (d) violates the rights of free speech protected by Article 40 of the Maryland Declaration of Rights and the Fourteenth Amendment to the Federal Constitution.

"By Section 423, the provisions of Section 421 are made inapplicable to accounts of crime which are

part of the ordinary and general dissemination of news appearing in publications which are published not less frequently than once a week. Newspapers, therefore, are [in general] exempt from the operation of the law. The plaintiff contends that the classification is arbitrary, unreasonable and a violation of the Equal Protection Clause of the Fourteenth Amendment. The defendants urge that the State has the right and power to classify the subjects of legislation and that the classification is reasonable.

"The Washington comic book act held unconstitutional in *Adams v. Hinkle, supra,* contained a provision that no comic section of any regularly published daily or weekly newspaper shall be deemed to be a comic book for the purposes of the act. While the Court was unanimous in holding the act unconstitutional, there was a five to four division as to the validity of the exception. The majority, in holding the exemption unconstitutional, said, at 322 P. 2d 857, 858:

" 'By § 3(4), comic sections of newspapers are exempted from license requirements. With commendable candor the attorney general, in argument at our bar, admitted that newspapers might print or publish anything found in any comic book without being subject to the restrictions imposed. Newspapers are entirely free of any restriction. Such discrimination is prohibited by Art. 1, § 12 of the Washington constitution which is:

'No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations.'

and by the equal protection of the fourteenth amendment to the United States constitution.

" 'The attorney general earnestly contends that this is a reasonable classification, and that the legislature has a right to classify if there be a rational

basis for the classification. But this is not so when the equal protection clause is concerned with a right claimed under the first amendment. * * *

" 'When the rights claimed are among those protected from legislative invasion by the first amendment, the equal protection clause of the fourteenth amendment assumes increased importance.'

"In *Katzev v. County of Los Angeles* (Cal. 1959), 341 P. 2d 310, the Supreme Court of California held the Los Angeles 'crime comic book' ordinance unconstitutional. That ordinance made it a misdemeanor to sell or exhibit certain publications to children under eighteen, and defined the prohibited publications with greater specificity than does the Maryland act. The Court held that the record failed to disclose a clear, causal connection between the substantive evil of juvenile delinquency and the circulation of crime comic books, but also held the ordinance invalid on other grounds. One of the additional grounds upon which the ordinance was declared unconstitutional was a provision that it did not apply to those accounts of crime which appear in a newspaper of general circulation. The Court said, at 341 P. 2d 316:

" 'The ordinance denies distributors such as plaintiffs equal protection of the laws, since it establishes arbitrary and unreasonable exemptions. * * *

" 'Section 3b grants exemption to comic strips in newspapers, although these comic strips may not vary one iota from those appearing in the comic book media.

" 'Because these exemptions are unrelated to the purported purpose of the legislation, they impose an unfair burden on plaintiffs, thus denying them equal protection of the laws. * * *

" '* * * the exemption provided for newspaper comic strips is without justification. Although a newspaper would be perfectly free to circulate a fictional portrayal of crime, a comic book which fol-

lowed the frequent practice of reprinting newspaper comic strips would be banned. Unlike the exemptions for accounts of crime that are true or drawn from religious writings, this latter one is not based on content, nor is it a completely different form of presenting a story. Rather, the exemption is based solely on the nature of the product produced on paper. (Cf. Morey v. Doud, 354 U. S. 457, 466 et seq., 77 S. Ct. 1344, 1 L. Ed. 2d 1485.)'

"The Equal Protection Clause does not require that every state regulatory statute apply to all in the same business, but a statutory discrimination must be based on differences reasonably related to the purpose of the act in which it is found. *Morey v. Doud,* 354 U. S. 457. The exemption of newspapers from the scope of Section 421 of the Maryland act is broader than that contained in Section 423. The latter section exempts those accounts of crime which are part of the ordinary and general dissemination of news appearing in publications published not less frequently than once a week, with illustrative drawings and photographs, but subsection (a) of Section 421, by its terms applies only to publications 'principally composed of pictures,' and subsection (b) applies only to publications 'devoted to the publication' of the prohibited material. The same material can appear with impunity in newspapers, whether in the form of news accounts, comic pages or drawings, which is forbidden in other forms of publications.

"Newspapers containing such material can be purchased by minors under eighteen as easily as the publications which, to them, are prohibited. If, as the Legislature has found, children under eighteen are or may be incited to commit crimes because of the presentation in collected form of actual or fictional deeds of violent bloodshed, it is difficult to see how the incitement is less when the deeds are recounted in the daily 'comic' or other pages of newspapers. The weekly 'comics' which are a fea-

ture of the modern paper are exempt because they are only one section of the paper in which they appear, even though the child may reach only for that section, but under the act it may be a criminal offense if some or all of the material of those sections is sold separately.

"Like the Due Process Clause, the Equal Protection Clause is here to be considered in connection with a law which has a potential inhibitory effect on the freedom of the press. *Winters v. New York, supra; Smith v. California, supra; Baltimore v. A. S. Abell Co., supra.* Under the Maryland act, some papers and magazines are singled out and held not entitled to the freedoms guaranteed by the Fourteenth Amendment and the Maryland Declaration of Rights. The test, under subsections (a) and (b), is whether the publication is 'principally composed' of or is 'devoted to' the material which the Legislature has found may be injurious to persons under eighteen. The exempt publications may publish the same accounts of crime which appear in the publications subject to the act; their daily or weekly pages of 'comics' and 'adventures' may contain exactly the same strip drawings of fictional deeds of violent bloodshed which are shown in the banned 'comic books'. Indeed, the amount of the same kind of material in the daily or weekly press may be greater than that in some non-exempt publications, as long as the major portion of the paper consists of matter not within the scope of the act. Viewed in this aspect, the discrimination is not according to what is published but what is not published.

"Freedom of the press is directly affected as to one class of publication but not as to another, and the classification is made, not on the basis of material deemed objectionable, but the proportion of that material to other published matter. The classification, in my opinion, is unreasonable, and violates the Equal Protection Clause of the Fourteenth Amendment.

"The defendants ask that if any part of the statute is held unconstitutional, such portions as may be valid be sustained under the severability provisions of Section 425. They contend that, irrespective of the validity of other portions of the act, the prohibition regarding obscenity is clearly constitutional and should be upheld. As has been pointed out, it is clear that obscenity is not within the area of constitutionally protected speech or press. *Roth v. U. S., supra.* Statutes making the utterance or publication of obscenity an offense must give adequate warning of the conduct proscribed, but the terms need not be precise; the Constitution does not require impossible standards.[9] In the present case, the standards relating to obscenity are inextricably mingled with the terms relating to other prohibited publications and the standards as to all prohibited publications are subject to the vagueness which was held to violate due process in the *Winters* case.

"The right of the Legislature to pass a statute specifically designed and properly framed to protect children against material obscene for them if not for adults [10] is not here in issue. In the act involved in this case, such a purpose was one of the legislative objectives, but the means employed to achieve it are the same as those used as to other conduct which the act proscribes, and it is those means which violate the constitutional guarantees. The Supreme Court, in *Winters v. New York,* and *Butler v. Michigan,* has fixed barriers of due process of law and freedom of the press which the Maryland statute clearly violates.

9. "The standards in Roth v. United States and Albert v. California, 354 U. S. 476 were held adequate. See, however, Kingsley International Pictures Corp. v. Regents, 360 U. S. 684 and Times Film Corporation v. City of Chicago, 355 U. S. 35 reversing 244 F. 2d 432.

10. "See Butler v. Michigan, 352 U. S. 380, 383 and Adams v. Hinkle, 322 P. 2d 844, 854. Cf. Goldstein v. Commonwealth of Virginia, 200 Va. 25, 104 S. E. 2d 66.

"These violations permeate the entire act. Subsections (a) and (b) fail to give fair notice of what conduct including but not limited to obscenity will be punished. Subsection (d) arbitrarily deprives the adults of Maryland of their constitutional liberties under the Maryland Declaration of Rights and the Fourteenth Amendment as to publications none of which the legislation, as to them, seeks to make illegal. The discriminations between classes of publications which are infringements of the Equal Protection Clause inhere in every provision of the statute.

"A severability clause does not constitute an absolute or inexorable command; it is merely an aid to interpretation. The test of severability is the effectiveness of an act to carry out, without its invalid portions, the legislative intent in enacting it. *Baltimore v. A. S. Abell Co.,* 218 Md. 273, 290, 145 A. 2d 111; *Cromwell v. Jackson,* 188 Md. 8, 28, 52 A. 2d 79. The Legislature's power and intent to endeavor to minimize crimes among juveniles is not in question, but the invalidity of the means used to carry out that intent makes any permissible revision a matter for legislative, not judicial determination."

We will note in closing that this Court has recognized and applied the rule in regard to the definiteness required in criminal statutes, as laid down by the Supreme Court of the United States. Among the cases doing so, see *State v. Magaha,* 182 Md. 122, 125, 32 A. 2d 477; *Blum v. Engelman,* 190 Md. 109, 113, 57 A. 2d 421; *McGowan v. State,* 220 Md. 117, 125, 151 A. 2d 156.

The decree passed below declared that Subsections (a) (b) and (d) of Section 421 of Article 27 of the Code, 1957, (1959 Cum. Supp.) were unconstitutional and void; and enjoined the appellants from enforcing them.

For the reasons given above, the decree will be affirmed.

*Decree affirmed, with costs.*