EDGEWOOD NURSING HOME ET AL. *v.* DIONNE RENNA MAXWELL

[No. 144, September Term, 1977.]

*Decided April 24, 1978.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE, ORTH and COLE, JJ.

*Raymond A. Richards* for appellants.

*A. Gus Mastracci* for appellee.

MURPHY, C. J., delivered the opinion of the Court.

In this workmen's compensation appeal,[1] the employer and insurer (the appellants) contend that the lower court's interpretation of § 67 (6) of the Workmen's Compensation Act, Maryland Code (1957, 1964 Repl. Vol., 1975 Cum. Supp.), Art. 101 deprived them of due process of law in contravention of the fourteenth amendment. Section 67 (6),[2] as interpreted

---

1. We granted certiorari prior to decision by the Court of Special Appeals.
2. Section 67 (6) provides in pertinent part:

" *'Injury,' 'personal injury,' 'accidental injury'* and *'accidental personal injury'* means only accidental injuries arising out of and in the course of employment ... and includes an injury caused by the wilful or negligent act of a third person directed against an employee in the course of his employment."

Section 67 (6) must be read in conjunction with the general coverage provisions of § 15 of the Act which require an employer to pay compensation

in *Giant Food, et al. v. Gooch,* 245 Md. 160, 225 A. 2d 431 (1967), provides in effect that to be compensable under the Act an injury caused to an employee by the wilful or negligent act of a third person need not arise out of, but only in the course of employment.

The pertinent facts are as follows: Brenda Higgins, an employee of the Edgewood Nursing Home, was shot and killed by her estranged paramour while she was at work. A workmen's compensation claim for dependency benefits was filed on behalf of Brenda's infant daughter, Dionne. The commission concluded that Brenda's death was compensable under the Act and that Dionne was totally dependent upon Brenda at the time of her death.

An appeal was thereafter taken to the Superior Court of Baltimore City and heard on the record. In a memorandum filed with the court, the appellants claimed that to interpret § 67 (6) to permit recovery in the absence of a causal connection between the death and the employment, other than mere occurrence in the course of employment, would be repugnant to the fourteenth amendment because it would make the employer "an involuntary insurer of the life and health of his employees under circumstances where such liability would not rest upon the employer-employee relationship." The court affirmed the commission; it held, relying upon *Gooch,* that Brenda's death was compensable under § 67 (6) of the Act and that the evidence established that Dionne was totally dependent upon her mother at the time of her death. It did not address the constitutional issue raised by the appellants.

In reasserting their constitutional argument before us appellants contend that Brenda's death was not causally connected with her employment, and was in no sense due to inherent conditions of her work. Consequently, they argue, the lower court's interpretation of § 67 (6) requires an employer gratuitously to insure the life of its employees against non-work related hazards and therefore

"for the disability or death of his employee resulting from an accidental personal injury sustained by the employee arising out of and in the course of his employment...."

unconstitutionally interferes with the employer's right freely to contract with its employees. No authority is cited in support of the appellants' argument; indeed, the appellee is so unimpressed with the argument that she totally ignores it in her brief.

In *Gooch,* as here, the assault upon the employee did not arise out of the employment but occurred in the course of it for a reason not causally connected with the employment. Gooch was shot on the employer's parking lot by a person who mistakenly believed that he was romantically involved with his wife. The Court traced the history underlying § 67 (6) and, interpreting that section in light of § 15, concluded that the legislature intended to create a special classification for employees injured by the wilful or negligent act of a third person; as to that classification of compensable injuries, there was no requirement that the injury arise out of the employment but only that it be "directed against an employee in the course of his employment." The Court reviewed a spate of its earlier cases involving injuries inflicted upon employees, either wilfully or negligently, by third parties and noted that some confusion existed in determining whether the injuries arose out of the employment. It said that prior to 1951, when § 67 (6) was amended to its present form, an injury to an employee inflicted by a third person in the course of the employment, either wilfully or negligently, was compensable if the danger of such injury was an incident of the special conditions of the employment — that is, if it arose out of the employment — but that such an injury was not compensable if it was not attributable to the working environment — that is, did not arise out of the employment. The Court concluded that by enacting § 67 (6) the legislature "intended to broaden the scope of the compensation statute to include as compensable an injury not attributable to the working environment provided it was incurred in the course of employment." [3] 245 Md. at 165. The constitutionality of § 67 (6) was not challenged in *Gooch.*

---

3. Maryland's statute covering an award of compensation on behalf of an employee injured in the course of employment as a result of a wilful or negligent act of a third party is unique. In most jurisdictions, the infliction of such injuries must, in addition to occurring in the course of employment,

The Workmen's Compensation Act was passed in the exercise of the police power of the State to protect workers and their families from the hardships inflicted by work-related injuries. *Mazor v. State, Dep't of Correction,* 279 Md. 355, 369 A. 2d 82 (1977); *Solvuca v. Ryan & Reilly Co.,* 131 Md. 265, 101 A. 710 (1917). Whether the exercise of that power violates the due process clause depends on whether the particular statute under consideration provides a real and substantial relation to the public health, morals, safety and welfare of the citizens of this State. *Westchester West No. 2 v. Mont. Co.,* 276 Md. 448, 348 A. 2d 856 (1975); *Md. Bd. of Pharmacy v. Sav-A-Lot,* 270 Md. 103, 311 A. 2d 242 (1973). A large discretion is necessarily vested in the legislature to determine what the welfare of the public requires and what measures are necessary to promote it. *Bureau of Mines v. George's Creek,* 272 Md. 143, 321 A. 2d 748 (1974); *Md. Coal etc. Co. v. Bureau of Mines,* 193 Md. 627, 69 A. 2d 471 (1949). The wisdom or expediency of a law adopted in the exercise of the State's police power is not subject to judicial review and such a statute will not be held void if there are any considerations relating to the public welfare by which it can be supported. *Bowie Inn v. City of Bowie,* 274 Md. 230, 335 A. 2d 679 (1975); *Salisbury Beauty Schools v. St. Bd.,* 268 Md. 32, 300 A. 2d 367 (1973). In other words, to be able to find fault with a law is not to demonstrate its invalidity; it may seem unjust, yet be free from judicial interference. *Matter of Trader,* 272 Md. 364, 325 A. 2d 398 (1974).

In the exercise of the police power the State may lawfully impose such burdens and restraints on private rights as may be reasonably necessary and proper to secure the general welfare. *Bureau of Mines v. George's Creek, supra; Md. Bd. of Pharmacy v. Sav-A-Lot, supra; LaRoque v. Co. Commissioners,* 233 Md. 329, 196 A. 2d 902 (1964). The due process clause does not, therefore, inhibit a State from

---

arise out of or because of the employment. Generally, injuries sustained by an employee as the result of an assault on his person by a third person are compensable if the injury can be attributed to a cause set in motion by the nature of the employment, or some condition or obligation having to do with the employment. *See* 1 A. Larson, *The Law of Workmen's Compensation* § 11.00 *et seq.* (1978); 6 W. Schneider, *Workmen's Compensation Law* § 1560 (3rd ed. 1948).

insisting that all contract and property rights are held subject to the constitutional exercise of the police power. *Bd. of Co. Comm'rs v. Colgan,* 274 Md. 193, 334 A. 2d 89 (1975); *Bruce v. Dir., Chesapeake Bay Aff.,* 261 Md. 585, 276 A. 2d 200 (1971); *Davis v. State,* 183 Md. 385, 37 A. 2d 880 (1944). Thus, freedom of contract is subject to legislative regulation in the interest of the public welfare so long as it does not violate constitutional guarantees or invade fundamental liberties. *West Coast Hotel Co. v. Parrish,* 300 U. S. 379, 57 S. Ct. 578, 81 L. Ed. 703 (1937); *Md. Medical Service v. Carver,* 238 Md. 466, 209 A. 2d 582 (1965); *Blum v. Engelman,* 190 Md. 109, 57 A. 2d 421 (1948).

A statute enacted under the police power carries with it a strong presumption of constitutionality and the party attacking it has the burden of affirmatively and clearly establishing its invalidity; a reasonable doubt as to its constitutionality is sufficient to sustain it. *Gino's v. Baltimore City,* 250 Md. 621, 244 A. 2d 218 (1968); *Deems v. Western Maryland Ry.,* 247 Md. 95, 231 A. 2d 514 (1967); *Miedzinski v. Landman,* 218 Md. 3, 145 A. 2d 220 (1958). In other words, the legislature is presumed to have acted within constitutional limits so that if any state of facts reasonably can be conceived that would sustain the constitutionality of the statute, the existence of that state of facts as a basis for the passage of the law must be assumed. *Salisbury Beauty Schools v. St. Bd., supra.* These principles are applicable in testing the constitutionality of workmen's compensation laws. *King Furniture v. Thompson,* 248 Md. 682, 238 A. 2d 231 (1968); *Celanese Corporation v. Davis,* 186 Md. 463, 47 A. 2d 379 (1946).

The appellants recognize that freedom to contract in connection with the employer-employee relationship is not absolute; that it may be restricted consistent with due process requirements; and that the legislature has a wide field of discretion in legislating to promote the public interest. They simply suggest that a workmen's compensation law imposing liability upon an employer which does not rest upon the employer-employee relationship constitutes an unconstitutional interference with the employer's right of

freedom to contract. They also suggest that § 67 (6) is unconstitutional as applied because it requires the employer to pay compensation for an injury inflicted by a third person unrelated to the employee's work, presumably for the reason that it takes their property without due process of law. In support of these arguments, the appellants place total reliance on the vintage Supreme Court cases of *Arizona Copper Co. v. Hammer,* 250 U. S. 400, 39 S. Ct. 553, 63 L. Ed. 1058 (1919), and *West Coast Hotel Co. v. Parrish,* 300 U. S. 379, 57 S. Ct. 578, 81 L. Ed. 703 (1937). Neither case is apposite.

In *Arizona Copper,* the Supreme Court upheld the constitutionality of an early workmen's compensation law covering injuries to employees arising out of and in the course of the employment and due to inherent conditions of the work. In holding that the law was a permissible exercise of the State's police power, the Court found no violation of an employer's right to contract with respect to the terms and conditions of employment. The Court did not consider whether due process requirements would be offended in the absence of a statutory provision for a causal connection between the injury and the employment. The appellants draw solace from this case by reasoning that the fundamental right of freedom to contract would have been unconstitutionally impaired had the statute not required that the injury arise out of the employment and be due to its inherent conditions. Nothing in *Arizona Copper* even remotely supports this convoluted reasoning.

*West Coast Hotel* involved a state statute authorizing the fixing of minimum wages for women and minors. The Supreme Court upheld the statute as a permissible exercise of the police power and hence not violative of the fourteenth amendment right of freedom of contract. Indeed, the case supports the principle that freedom to contract is not an unqualified right, and that the police power may be exercised, consistent with due process requirements, with respect to contracts between employers and employees. *See generally Nebbia v. New York,* 291 U. S. 502, 54 S. Ct. 505, 78 L. Ed. 940 (1934).

More in point is *Cudahy Co. v. Parramore,* 263 U. S. 418, 44 S. Ct. 153, 68 L. Ed. 366, 30 A.L.R. 532 (1923), involving the Utah Workmen's Compensation Act, which provided for payment of compensation for the personal injury or death of an employee due to an accident "arising out of or in the course of his employment." In that case, Parramore was killed when a railroad engine struck his car while he was en route to work on the only road that led to the plant. The Supreme Court of Utah decided that the accident arose out of or in the course of the employment, and awarded compensation to Parramore's dependents. The employer contended that the statute, as thus construed and applied, deprived it of property without due process of law in violation of the fourteenth amendment. More specifically, it claimed that the accident occurred on a public road off the employer's premises; that it happened seven minutes prior to the beginning of the work day and was therefore outside the hours of the employment, and occurred at a time when the employee was not engaged in any business of the employer; that it was not the result of risk from the work, but was a common peril to which the public generally was exposed; and that consequently liability was imposed arbitrarily and capriciously. The Supreme Court held that under the facts and circumstances presented, it was fairly open to the Utah Supreme Court to find that the necessary causal relation between the accident and the employment sufficiently existed. The Court based its decision on the fact that the road on which Parramore traveled provided the only access to the plant; that he could take no other route to the plant and therefore was invited by the employer to cross the tracks; that he was obliged to do this regularly; that the railroad was immediately adjacent to the plant and by means of switches was connected to it. It said, 263 U. S. at 423: "It may be assumed that where an accident is in no manner related to the employment, an attempt to make the employer liable would be so clearly unreasonable and arbitrary as to subject it to the ban of the Constitution; but where the accident has any such relation we should be cautious about declaring a state statute creating liability against the employer invalid upon that ground." The Court

said that whether a given accident is so related or incident to the business must depend upon its own particular circumstances, and that no exact formula existed which would automatically solve every case. *See also Fassig v. State,* 95 Ohio St. 232, 116 N. E. 104 (1917), and *Industrial Commission of Ohio v. Weigandt,* 102 Ohio St. 1, 130 N. E. 38 (1921), questioning, on due process grounds, the constitutionality of an early workmen's compensation law requiring payment of benefits for injuries sustained by employees which had their cause outside of and disconnected with the employment.

We think the employer's obligation under § 67 (6) to pay compensation on behalf of an employee injured in the course of his employment by the wilful or negligent act of a third party does rest upon the employer-employee relationship. The injury is work-related in the sense that even though it arose for personal reasons not attributable to the working environment, it occurred within the course of employment on the employer's premises at a time when the employee was obliged to be present and at work; in other words, the employee's presence at the nursing home when the peril struck was a necessary part of her employment and the injury was inflicted in the course of that employment. In view of this nexus, and because the appellants have failed to carry the burden of establishing the invalidity of § 67 (6), we think the strong presumption of constitutionality afforded to the statute has not been overcome. It may be that § 67 (6) will lead to results unjust to employers in some cases, but if a causal connection between the injury and the employment beyond the requirement that the injury occur in the course of employment is to be mandated, it can only be done by the legislature.

Appellants also contend that the lower court erred in holding that there was legally sufficient evidence that the infant claimant was wholly dependent upon the deceased employee at the time of her death, within the meaning of § 36 (8) (a) of Art. 101. We have carefully reviewed the record in

light of the controlling case authority [4] and find no error in the lower court's affirmance of the Commission's order finding that Dionne was totally dependent upon Brenda.

*Judgment affirmed; costs to be paid by appellants.*

---

**4.** *See* Bituminous Constr. Co. v. Lewis, 253 Md. 1, 251 A. 2d 888 (1969); Johnson v. Cole, 245 Md. 515, 226 A. 2d 268 (1967); Superior Builders, Inc. v. Brown, 208 Md. 539, 119 A. 2d 376 (1956); Larkin v. Smith, 183 Md. 274, 37 A. 2d 340 (1944).