OPINION OF THE JUSTICES OF THE SUPREME COURT in Response to a question Propounded by the Governor of Delaware.

(*May* 21, 1962.)

To His Excellency Elbert N. Carvel, Governor of Delaware:

Reference is made to your two letters of April 17th and April 26th, addressed to the Chief Justice, requesting the opinion of the members of the Supreme Court upon the constitutionality of four Acts of the General Assembly passed during the second or thirty-day session of the One Hundred

and Twenty-first General Assembly. You state that the constitutionality of these Acts has been questioned on the ground that they do not fall within any of the three categories of legislation that may lawfully be considered during the second session of a General Assembly.

Article II, § 4 of the Constitution, as amended in 1959, *Del. C. Ann.*, provides as follows:

"The General Assembly shall meet on the first Tuesday of January, nineteen hundred and sixty-one, and on the same day in every second year thereafter, and on the first Tuesday in February, nineteen hundred and sixty-two, and on the same day in every second year thereafter, and at no other time, unless convened by the Governor. When the General Assembly shall be convened by the Governor, the session shall not continue longer than thirty days.

"The General Assembly may continue its session so long as in its judgment, the public interest may require, for a period not longer than ninety legislative days in odd years and thirty legislative days in even years. In any of said thirty legislative day sessions in even years, the General Assembly shall consider no bills other than (1) bills having to do with budgetary, revenue and financial matters, (2) legislation dealing with an acute emergency, and (3) legislation in the general public welfare."

Since the four acts referred to do not necessarily fall within the same category, we shall consider each separately.

*Senate Bill 308, being Ch. 348, Vol. 53,*
*Delaware Laws*

This is an act to amend Chapter 83 of Title 16 of the Code, embodying the Building Code for rural New Castle County. The amendatory act amends three sections of the chapter. The present statute authorizes the adoption of a building code for only part of the county, *i.e.* the "Wilmington

Metropolitan Area" outside of the City of Wilmington. The general purpose of Senate Bill 308 is to grant authority to extend the code to all of the county outside of Wilmington excepting farm properties.

Obviously Senate Bill 308 does not fall within either category (1) or category (2) of the constitutional provision above quoted.

The question therefore is whether Senate Bill 308 is "legislation in the general public welfare."

The phrase "general public welfare" is a vague one. What is meant by the use of the word "general"?

In giving a meaning to the phrase we are aided by the history of the 1959 Constitutional Amendment. A thorough examination of the Constitutions of all of the States reveals that only one State, Maryland, has such a provision. Moreover, the language of our provision is almost identical with that of the Maryland provision. The language of our provision specifying the three categories of permissible legislation is word for word that of the Maryland provision. The Maryland provision was adopted in 1948. Our amendment was first passed in 1957 (51 *Del. L.* c. 105), and finally approved in 1959 (52 *Del. L.* c. 21). We think it is almost certain that our provision was taken from the Maryland Constitution.

Prior to 1959 the Court of Appeals of that State had construed the phrase "general public welfare" in two reported decisions.

In *Funk v. Mullan Contracting Co.*, 197 *Md.* 192, 78 *A.* 2d 632, 79 *A.* 2d 152, an act regulating wages was so drawn as to exempt from its operation three counties of the State. The court said that since every act passed by the legislature is supposed to be in the public welfare, whether local, general, or special, something was meant by the use of the word "gen-

eral". The court concluded that by the use of the word "general" the legislature meant to restrict itself to matters generally affecting the State rather than affecting parts thereof. The court qualified this holding, however, by saying:

"We are not required on this record to determine whether acts covering subjects of interest and importance to the entire State, and by their terms applicable thereto, might not be legislation in the general public welfare, though their actual geographical impact is upon parts of the State only." 78 A. 2d 636-637.

This qualification was invoked in the later case of *Miedzinski v. Landman*, 218 *Md.* 3, 145 *A.* 2d 220. That case dealt with an act prohibiting gambling on piers built over any waters within the State. It was assailed as local legislation not in the "general public welfare", because it could apply only to certain counties; gambling was strictly prohibited in all counties except three. Pointing out that there was no geographical limitation on the act, the court said that the actual impact geographically did not render it a special or local law. The court moreover gave weight to the circumstance that the act was adopted in the desire to maintain friendly relations with the neighboring State of Virginia.

We have discussed these Maryland decisions because it is a well-settled principle of construction that when a legislative enactment of our State is drawn from an existing statute or constitution of another State, there is a strong presumption that our legislature, in adopting the law of the other State, has intended to adopt also the construction of that statute or constitution by the courts of that State. *Chicago Corp. v. Munds*, 20 *Del. Ch.* 142, 147-148, 172 *A.* 452.

We think that this presumption should be given effect. We are accordingly of opinion that the phrase "legislation in the public welfare" was intended to exclude merely local or special laws.

■ It is, of course, impossible to evolve a precise definition of "local" or "special" to fit every case. The general purpose of legislation, as well as its specific provisions, must be considered. In the case of Senate Bill 308, however, there is no room for doubt. By its terms it applies only to a portion of rural New Castle County. It is a local law, and not one "in the general public welfare".

We therefore advise you that in our opinion it is unconstitutional.

### House Bill 504, being Ch. 354, Vol. 53
### Delaware Laws

■ This is an act amending Chapter 331 of the same volume. Chapter 331 is a comprehensive act, for the enlargement and improvement of the public school system. It authorizes the issuance of bonds to finance such improvements in certain specified schools districts and the acceptance of federal funds for building purposes.

This act is clearly one falling within category (2) of the constitutional provision above quoted.

■ Chapter 354 amends Chapter 331 by adding the Marshallton School District to the list of districts specified in Chapter 331, and appropriating the necessary funds.

Chapter 331, and the amendment in Chapter 354, relate to revenue and financial matters. They are clearly within category (2) of the constitutional provision.

In our opinion they are constitutional.

### Senate Bill 358, being Ch. 356, Vol. 53,
### Delaware Laws

■ This is an act amending Chapter 11 of Title 14 of the Code relating to the boundaries of school districts. Chapter 11 is of statewide scope, except that it appears not to apply

to the City of Wilmington. The amendatory act relates to the method of consolidation of school districts.

In our opinion, although Wilmington is not included, the act is one in the general public welfare. It is in no real sense a local or special law. In practice, the City of Wilmington has always had, to a great extent, a separate school system. Certain of the statutes relating to education apply to the city schools; others do not.

We do not think that the General Assembly in using the phrase "general public welfare" intended to prevent the consideration of legislation relating to the general educational system of the State, though in some respects such legislation does not apply to the City of Wilmington. The constitutional provision must receive an interpretation that reasonably comports with our statutory educational scheme.

We are of the opinion that Senate Bill 358 is constitutional.

*Senate Bill 357, being Ch. 355, Vol. 53, Delaware Laws*

This is an act amending Chapter 25 of Title 14 of the Code. Chapter 25 relates to high schools throughout the State. It is general in its scope except that § 2507, relating to new high school districts, does not apply to the City of Wilmington. Senate Bill 357 amends § 2507 by imposing certain limitations on the exercise of the power of the State Board of Education and the district boards to create new high school districts.

For the same reasons we have set forth in the consideration of Senate Bill 358, we are of opinion that Senate Bill 357 is legislation in the general public welfare and is constitutional.

The foregoing represents the opinion of all the members of the Court.

Respectfully submitted,

s/ CLARENCE A. SOUTHERLAND,
Chief Justice

s/ DANIEL F. WOLCOTT
Associate Justice

s/ ALBERT J. STIFTEL
Judge