Carl B. **BENSON**, Individually and as Executor of the Estate of June Nelson Benson, Deceased, et al., Plaintiffs,

v.

Steven **LYNCH** et al., Defendants.

Civ. A. No. 75-129.

United States District Court, D. Delaware.

Dec. 2, 1975.

Vincent J. Poppiti, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., and Allen E. Ertel, of Ertel & Kieser, Williamsport, Pa., of counsel, for plaintiffs.

Wayne N. Elliott, of Prickett, Ward, Burt & Sanders, Wilmington, Del., for defendant Lillian Greitzer.

Howard M. Berg, of Berg, Komissaroff & Sawyer, Wilmington, Del., attorney for defendant Lorraine Greitzer.

Dennis D. Ferri, of Becker & Ferri, Wilmington, Del., for defendants Steven Lynch and Howard Lynch.

## OPINION

EDWIN D. STEEL, Jr., Senior District Judge:

On June 29, 1974, in the State of Delaware, two cars collided which resulted in a suit brought by the driver and occupants of one of the cars because of injuries and one death occasioned by the collision. Plaintiffs are Carl B. Benson, individually and as executor of the estate of June Nelson Benson, deceased, Carol Marie Hughes and her husband, Michael F. Hughes, individually and as guardian of their three minor children, Heidi, Erin and Micah. Plaintiffs charge the defendants, Howard Lynch, Steven Lynch, Lorraine Greitzer and Lillian Greitzer with negligence which caused the accident.

Plaintiffs allege that Steven Lynch and Lorraine Ann Greitzer were negligent in driving the car which collided with the one in which the plaintiffs were riding, that Lillian Greitzer was negligent for entrusting her daughter to drive a vehicle on the highways knowing that she was irresponsible and not a careful driver, and that Howard Lynch, apparently because of his ownership of the vehicle, is also liable. Diversity jurisdiction is alleged and exists under 28 U.S.C. § 1332(a)(1).

A motion for summary judgment has been filed by the defendants Lorraine Greitzer, Steven Lynch and Howard Lynch. It is addressed to the first cause of action alleged by Carl B. Benson under the Wrongful Death Act, 10 Del.C. § 3704, and the second cause of action alleged by Benson under the Survival Statute, 10 Del.C. § 3701. Both causes of action are based upon the death of Benson's wife, June Nelson Benson.

As to the first cause of action, defendants argue that the plaintiff has no standing to sue since he purports to bring the action as executor of the estate of his wife, whereas section 3704(b), which creates the cause of action for wrongful death, confers the

right to sue on the surviving husband. Plaintiff properly construes the statute but overlooks the fact that paragraph 19 of the first cause of action alleges that plaintiff is "the husband and the Executor of the Decedent". Since this allegation embraces the plaintiff as a widower who clearly has standing under section 3704 to sue, it would be captious to require plaintiff to replead the cause of action. Compare *Bennett v. Andree*, 252 A.2d 100, 101 (Del.Super.1969) where the plaintiff who, as here, brought an action under both the Wrongful Death Act and Survival Statute in the dual capacity of "widow and administratrix" was implicitly recognized as a proper party.

█ While plaintiff, as the surviving husband, has standing to sue under the Wrongful Death Act, he may not recover punitive damages, *Reynolds v. Willis*, 209 A.2d 760, 762 (Del.Supr.1965), funeral expenses, *Bennett v. Andree*, 252 A.2d 100, 102 (Del.Super.1969), or loss of consortium, *Abele v. Masi*, 273 A.2d 260, 261 (Del.Supr.1970). His recovery is limited to the pecuniary loss which he sustains as a result of his wife's death. *Bennett v. Andree, supra*, p. 102. From what has been said it follows that the motion of defendants to dismiss the first cause of action must be denied but recovery thereunder limited by excluding those items of damage specified above.

█ The second cause of action is based upon the Survival Statute, § 3701. The motion must be granted because the undisputed evidence reveals that June Nelson Benson died simultaneously with the occurrence of the accident. Michael E. Hughes testified (24–25) as follows:

"Q When you first spoke to your mother-in-law [June Nelson Benson] there was no response; is that right?

A Yes.

Q Now, was she asleep just prior to the accident as far as you know?

A Yes, she was.

Q So that you had no words with her then from the time she was asleep prior until at all.

A No, sir.

Q And you heard no noises or other complaints from her either just before the accident or after the accident.

A No.

Q As far as you know then she died instantaneously?

A Yes, sir.

Q So that you checked your family as you have indicated and went to your mother-in-law and you felt her pulse?

A Yes.

Q And you could not get any.

A Right."

Michael's wife, Carol Marie Hughes, testified (14):

"Q —we have heard your husband's testimony today. Did you make any attempts to speak with your mother following the accident?

A Yes. She was sitting up.

Q What did she do?

A She was sitting up by the door that was opened, and I patted her cheek, then I kept looking at her chest but it wasn't moving. So, I thought that she was gone.

Q And she was asleep prior to the accident?

A As far as I know. The last I had looked back at her she was.

Q So that you had no conversation with her at any time.

A Not within probably ten minutes.

Q Prior to the accident.

A Right.

Q And then it is your conclusion as well that she died instantaneously from the accident?

A Yes."

Plaintiff argues that this testimony was based upon nothing more than an "assumption" by the deponents. How-

ever, both Michael Hughes and his wife, Marie, testified that they felt Mrs. Benson's pulse and could get no reading. Both observed her chest and could detect no motion. No possible inference can be drawn from anything in the record that Mrs. Benson was nevertheless alive. If there was any evidence that she survived the accident, plaintiff should have supplied it. Having failed to do so, the only evidence of record supports the conclusion that her death was simultaneous with the accident. Under the second cause of action, plaintiff claims in paragraph 3 damages for Mrs. Benson's estate based upon pain and suffering which she experienced prior to her death as well as punitive damages. Since Mrs. Benson died simultaneously with the accident there can be no basis for the recovery of these items of damage and the second count must be dismissed.

 This leaves for decision .the motion for summary judgment filed by the defendant Lillian Greitzer. The second cause of action which by reference embodies paragraph 14 of the complaint is the only cause of action which purports to impose liability upon her. It charges that her negligence consisted of "negligently entrusting her daughter [Lorraine] to drive a vehicle upon the highway knowing full well that she was irresponsible and not a careful driver". Lillian was neither the owner of the car nor in it at the time of the accident. Consequently, 21 Del.C. § 6106 is inapposite. Furthermore, there is nothing in the record to support the charge that Lillian knew that her daughter Lorraine "was irresponsible and not a careful driver".* However, Lorraine was under 18 at the time of the accident

(Lorraine p. 2) and Lillian had signed the application for her daughter's license. (Lillian pp. 2-3). Any negligence on the part of Lorraine was imputable to her mother Lillian, under 21 Del.C. § 6105(a). Lillian correctly argues that paragraph 14 charges her with direct negligence rather than negligence imputable to her. This is true. The motion for summary judgment filed by Lillian will be granted unless plaintiff moves for leave to amend the complaint to allege liability on the part of Lillian under 21 Del.C. § 6105(a).

Let an order be submitted consistent with this opinion.

---

* The undisputed evidence refutes any such knowledge on the part of Lillian. At the time of the accident Lorraine had a driver's license. She had taken Driver's Education at her school and received an A in it. (Lorraine 7, 8) Lillian considered her daughter Lorraine to be a conscientious driver. (Lillian 13) Prior to Lorraine obtaining her license her mother had ridden with her in the family car, practiced parallel parking, stopping and starting on a hill, and other things that had caused Lillian problems when she was learning to drive. (Lillian 3) Lillian satisfied herself that her daughter was a good driver by riding with her under many different kinds of conditions. Her daughter was always consistently conscientious. (Lillian 15)