Almeda JOHNSON, Guardian and next friend of Myrtle Lewis, Plaintiff,

v.

PHYSICIANS ANESTHESIA SERVICE, P.A., a Delaware corporation, et al., Defendants.

Almeda JOHNSON, Guardian and next friend of Myrtle Lewis, Plaintiff,

v.

Richard J. LENNIHAN, Jr., M.D., et al., Defendants.

Civ. A. Nos. 83–196 CMW, 84–80 CMW.

United States District Court, D. Delaware.

Oct. 18, 1985.

---

Ben T. Castle, and David C. McBride, of Young, Conaway, Stargatt & Taylor, Wilmington, Del., for plaintiff.

Victor F. Battaglia, Robert K. Beste, Jr., and Wayne Marvel of Biggs & Battaglia, Wilmington, Del., and Walter L. Pepperman and Donald E. Reid of Morris Nichols Arsht & Tunnell, Wilmington, Del., for defendant Physicians Anesthesia Service, P.A.

William D. Bailey, Jr., and Phoebe S. Young of Bayard, Handelman & Murdoch, P.A., Wilmington, Del., for defendant Peter J. Mette.

Warren Burt, Wilmington, Del., for defendant Richard W. Skinner.

F. Alton Tybout of Tybout, Redfearn, Casarino & Pell, Wilmington, Del., for defendant Richard J. Lennihan, Jr., M.D. and Richard J. Lennihan, Jr., M.D., P.A.

John A. Parkins and Terry Crain of Richards, Layton & Finger, Wilmington, Del., for defendant Wilmington Medical Center, Inc.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

These consolidated civil actions assert claims of medical malpractice arising from an operation performed on Myrtle Lewis on February 18, 1982. Almeda Johnson, Myrtle Lewis's sister, originally filed suit on April 5, 1983 as guardian and next friend of Myrtle Lewis, who at that time was incompetent and institutionalized at the Wilmington Medical Center in a comatose state.

On March 2, 1985, Myrtle Lewis died. Plaintiff now seeks to amend her complaints to assert against all defendants a claim arising from Myrtle Lewis's death under the Delaware Wrongful Death Act, 10 Del.C. §§ 3721–3725 (1982). This statute became effective December 1, 1982, between the time of the alleged malpractice and Myrtle Lewis's death. Plaintiff seeks damages under 10 Del.C. § 3724(d) on behalf of the spouse and children of Myrtle Lewis.

Defendants make three arguments in opposition to this amendment. First, Defendants contend that 10 Del.C. § 3704(b) (repealed Dec. 1, 1982), the wrongful death statute in effect at the time of the alleged wrongdoing, should control, not 10 Del.C. §§ 3721–3725, the wrongful death statute in effect at the date of death.

Second, Defendants contend that the statute of limitations for malpractice actions, 18 Del.C. § 6856, which runs for two years from the date of injury, bars any wrongful death action. Myrtle Lewis died three years and two weeks after the date of her operation.

Third, Defendant Wilmington Medical Center contends that Almeda Johnson, who is now the administratrix of Myrtle Lewis's estate, is not the proper party to bring a wrongful death action.

## I.

No Delaware court has dealt with these issues. This Court sits in exercise of its diversity jurisdiction. As such, the Court, although providing a federal forum, must apply the substantive law of the appropriate state jurisdiction as expressed in that state's statutes and the decisions of its highest courts. *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).[1] While *Erie* established the source of law for the decisions of federal courts in diversity cases, knowing the source of law does not guarantee that it can be ascertained with complete certainty. Federal courts in applying state law fre-

quently encounter instances in which state law is not readily accessible because the state's highest court has not recently addressed a particular question of law. *See Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp.,* 626 F.2d 280, 284 (3d Cir.1980).

"In the absence of an authoritative pronouncement from the state's highest court, the task of a federal tribunal is to predict how the court would rule." *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.,* 652 F.2d 1165, 1167 (3d Cir.1981). Accurate forecasts of the decisions of a state's highest court must begin with an examination of the best available evidence. Evidence of state law comes in many forms: lower state court precedents, related decisions and considered dicta of a state's highest court, the policies that inform that court's application of certain legal doctrines, the decisions of courts in another jurisdiction and even legal treatises and articles. *See McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657, 662–63 (3d Cir.), *cert. denied,* 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980); *Brown v. Caterpillar Tractor Co.,* 696 F.2d 246, 250 (3d Cir.1982). The decisions of state trial courts are not to be regarded by federal courts as conclusive evidence of what the state's highest court would hold, although state trial court decisions should be accorded some weight. *Commissioner v. Estate of Bosch,* 387 U.S. 456, 464, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967). Under some conditions, federal authority may not be bound even by intermediate state appellate court rulings, *id.,* especially when such rulings bear certain indicia of unreliability. *See National Surety Corp. v. Midland Bank,* 551 F.2d 21, 32 (3d Cir.1977). The purpose of these prudential rules for ascertaining state law is not to afford federal courts unfettered discretion in deciding issues of state law, but to assure that litigants in a diversity action are not penalized by being deprived of the same flexibility that a state court could reasonably expect to show, *Becker v. Interstate Properties,*

---

1. In this case, both parties agree that the case is controlled by Delaware law.

569 F.2d 1203 (3d Cir.1977), *cert. denied,* 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978), when the federal court is, in effect, sitting as a state court. *Commissioner v. Estate of Bosch,* 387 U.S. at 465, 87 S.Ct. at 1783.

## II.

At the time of Myrtle Lewis's operation, 10 Del.C. § 3704(b) controlled all Delaware wrongful death claims. The statute read as follows:

> Whenever death is occasioned by unlawful violence or negligence, and no suit is brought by the party injured to recover damages during his or her life, the widow or widower of any such deceased person, or if there is no widow or widower, the personal representatives, may maintain an action for and recover damages for the death and loss thus occasioned.

The right of action created by § 3704(b) depended on certain conditions. First, the injured party must have died. Second, the injury must have caused the death. Third, the decedent must not have brought a personal injury action during his lifetime. *Saunders v. Hill,* 202 A.2d 807, 809 (Del. 1964), *Perry v. Philadelphia, B. & W.R. Co.,* 77 A. 725 (Del.Super.Ct.1910), *Coulson v. Shirks Motor Express Corp.,* 48 Del. 561, 107 A.2d 922 (1954).

The Supreme Court of Delaware held that, under § 3704(b), only the spouse of the deceased could bring an action if that spouse was alive, *Reynolds v. Willis,* 209 A.2d 760 (Del.1965) and that only monetary loss suffered as the result of death was recoverable as damages. *Id.* "Monetary loss" was later held not to include funeral expenses, *Bennett v. Andree,* 252 A.2d 100 (Del.1969), compensation for household and child care work, *Abele v. Massi* 273 A.2d 260 (Del.1970), or punitive damages, even in murder, *Benson v. Lynch,* 404 F.Supp. 8 (D.Del.1975).

In 1982, the General Assembly repealed § 3704(b). 63 Del.Laws c. 256, § 3. At the same time, it enacted an entirely new wrongful death statute, 10 Del.C. §§ 3721–3725. The new statute by necessity incorporates the first two conditions, death and causation, that were found in § 3704(b).[2]

Unlike its predecessor, however, the new statute allows a wrongful death action to be brought and damages to be awarded for the benefit of the spouse, parent and child of the deceased person, or if no spouse, parent or child qualifies, any person related to the decedent by blood or marriage. 10 Del.C. § 3724(a)–(c).

The new statute also allows, in determining the amount of damages, consideration of (1) deprivation of pecuniary benefits, as well as (2) loss of contributions for support, (3) loss of parental, marital and household services, including the reasonable cost of providing for the care of minor children, (4) reasonable funeral expenses not to exceed $2,000, and (5) mental anguish of the surviving spouse and children of the deceased[3] resulting from the death. 10 Del.C. § 3724(d).

## III.

■ Myrtle Lewis's injury occurred prior to the date of enactment of the new wrongful death statute and her death occurred after its enactment. The crux of the issue is which wrongful death statute should apply. The parties can point to no cases from other jurisdictions on point. Many of the cases upon which they rely deal with situations in which both the injury and the death took place before an act's effective date or where the date of injury and death coincide. *See, e.g., Gleason v. Huss, Inc.,* No. 80C–JL–9, (Del.Super.Ct. filed Apr. 4, 1983) (Balick, J.); *Kleibrink v. Missouri-Kansas-Texas R. Co., Inc.,* 224 Kan. 437,

---

**2.** "An action may be maintained against a person whose wrongful act causes the death of another." 10 Del.C. § 3722(a).

**3.** If no spouse or children survive, then the deceased's parents or person standing *in loco parentis* to the deceased, and persons to whom the deceased stood *in loco parentis* can recover for mental anguish. 10 Del.C. 3724(d)(5).

581 P.2d 372 (1978); *Betesh v. United States*, 400 F.Supp. 238 (D.D.C.1974); *Wittel v. Baker*, 10 Md.App. 531, 272 A.2d 57 (Md.Ct.Spec.App.1971). In *Gleason*, for example, Judge Balick ruled that the new Delaware wrongful death statute did not apply to a wrongful death action filed two and one half years prior to the statute's effective date.

Other cases cited involve intervening amendments to a wrongful death statute, original parts and the substance of which remained intact throughout the dates of both injury and death. *See, e.g., Bradley v. Knutson*, 62 Wis.2d 432, 215 N.W.2d 369 (1974) (dicta); *Slate v. City of Fort Worth*, 193 S.W. 1143 (Tex.Civ.App.1917); *Quinn v. Chicago, M. & St. P.R. Co.*, 141 Wis. 497, 124 N.W. 653 (1910). The instant case, however, involves the striking in its entirety of Delaware's existing wrongful death statute and the enactment of a new wrongful death statute that bears little resemblance to its predecessor, but for the requirement that someone die because of an injury wrongfully inflicted.

Defendants contend that the case is controlled by the statute in effect at the time of injury, 10 Del.C. § 3704(b), which the General Assembly abrogated in 1982. Under this theory, the deceased's personal representative[4] could recover damages limited to pecuniary losses resulting from her death. The statute's third condition, however, would prohibit any wrongful death claim here because an action for personal injury damages, presently before the Court, was brought on Myrtle Lewis's behalf during her lifetime. Defendants thus posit a situation in which an action that could not have been brought until 1985 is barred by a statutory condition repealed in 1982.

When the legislature abrogates a statute, the courts have a responsibility to follow and apply the legislative will as expressed. *Cf. Makin v. Mack*, 336 A.2d 230, 234 (Del.Ch.1975), *citing* 1A Sands, *Sutherland Statutory Construction* §§ 2306–07 (4th ed. 1972). The legislature clearly abrogated § 3704(b). Its action does not "[give] rise to such harsh consequences as would prompt a search for legislative meaning contrary to that expressed" in 63 Del.Laws c. 256, § 3. *Mack*, 336 A.2d at 234.

The Court accordingly finds that 10 Del.C. § 3704(b), repealed effective December 1, 1982, does not control an action for the wrongful death of a person who died after that date.

## IV.

This conclusion does not resolve the issue of applicable law. Unlike *Mack*, in which the Court of Chancery held that the legislature's decision not to address in the superseding act a matter covered by the repealed statute[5] meant that the matter would "revert to and be governed by the principles of the common law," the legislature comprehensively addressed wrongful death actions in 10 Del.C. § 3721–3725. The Court next must construe this statute and determine whether the legislature intended for the provisions of the new act to apply to all actions in which the death occurred after the effective date of the Act.

The Court's duty in construing a statute is to ascertain and give effect to the intention of the legislature as expressed in the statute itself. *Murphy v. Board of Pension Trustees*, 442 A.2d 950 (Del.1982); *Kofron v. Amoco Chemicals Corp.*, 441 A.2d 226 (Del.1982). There is a presumption

4. A widow or widower was the proper party to bring an action under § 3704(b) if alive, *Jones v. Pennsylvania R.R.*, 50 Del. 57, 123 A.2d 111 (1956); *Reynolds v. Willis*, 209 A.2d 760 (Del. 1965); otherwise the proper party was the personal representative of the deceased's estate. *Seth v. Spruenken*, 328 A.2d 143, 145 (Del.Super. Ct.1974).

5. *Mack* involved notice requirements for a termination of a lease of farmland. The repealed statute, 25 Del.C. § 5105(b), provided for six months notice. The statute was replaced by the Delaware Landlord-Tenant Code of 1972, 25 Del.C. § 5101–5309 (1972), which specifically exempted farmland from a general 60-day notice provision but remained silent as to the notice required for termination of farmland leases.

that the legislature did not intend an unreasonable, absurd or unworkable result when enacting a statute, and if the object sought to be attained or general intent underlying statutory language can be ascertained from the statute as a whole, it will be given effect by the Court. *Opinion of the Justices,* 295 A.2d 718 (Del.1972); *E.I. du Pont de Nemours & Co. v. Clark,* 32 Del.Ch. 527, 88 A.2d 436 (1952). Although statutes in derogation of the common law are to be strictly construed, *Loden v. Getty Oil Co.,* 340 A.2d 174 (Del.Super.Ct.1975), the Court must, if reasonably possible, construe statutes as to give them effect. *State ex rel. Price v. 0.0673 Acres of Land,* 224 A.2d 598 (Del.1966).

The legislature's purpose in enacting the Delaware Wrongful Death Act was to "permit the recovery of damages not limited to pecuniary losses by persons injured as the result of the death of another person." 10 Del.C. § 3725 Plaintiff contends that this liberalization of Delaware's wrongful death law was intended to apply to all wrongful deaths occurring after the Act's effective date. Defendants counter that, because Myrtle Lewis's injury occurred before the Act's effective date, application of the new statute would retroactively affect their substantive rights.

It is generally recognized that a statute will not be given a retroactive application which affects substantive rights, at least in the absence of language showing a clear legislative intent to give retroactive effect. *Monacelli v. Grimes,* 48 Del. 122, 99 A.2d 255 (1953), *Eudaily v. Harmon,* 420 A.2d 1175 (Del.1980). This well-established principle prohibits application of the new Wrongful Death Act in situations in which the death, and by necessity the injury, occurred before the Act's effective date. It is less certain that the same result follows when only the injury preceded the effective date.

In support of its position that the date of injury controls, defendants rely on the Supreme Court of Delaware's construction of the former wrongful death statute, 10 Del.C. § 3704(b), in *Saunders v. Hill,* 202 A.2d 807 (Del.1964):

Although [§ 3704(b)] does create, in a sense, a new cause of action, it has been uniformly held in this state that such right of action is dependent upon the right of the person injured, had he not died in consequence of his injury, to maintain an action for personal injuries. *Such a conclusion is dictated by the words of the statute which presuppose the right of the decedent to bring the suit had he lived by conditioning the right to bring a wrongful death action upon the failure of the decedent to bring suit during his lifetime.*

*Id.* at 809 (emphasis added) (citations omitted).

In *Hill,* the Supreme Court thus concluded that the third condition for suing under the former statute—a requirement that no personal injury claim be brought during the deceased's lifetime—commanded that wrongful death actions under § 3704(b) depend and focus on the decedent's personal injury. This statutory mandate disappeared when the legislature repealed § 3704(b).

The thrust of the new wrongful death statute, 10 Del.C. § 3721–3725, is to provide an action to a decedent's survivors for injuries which result from a death.[6] The significant event is the death, since the right of action relates to the injuries resulting from it. Therefore, the significant point in time which determines the rights and liabilities of the parties is the date of death. *Cf. Comer v. Getty Oil Co.,* 438 A.2d 1239, 1242 (Del.Super.Ct.1981) (date of sale significant in UCC breach of warranty action).

This conclusion is in harmony with the language of the statute and the intention

**6.** For example, the statute provides that "damages may be awarded to the beneficiaries proportioned to *the injury resulting from the wrongful death*" 10 Del.C. § 3724(c). Similarly, the court or jury is to "fix the award at such sum as will fairly compensate for *the injury resulting from death.*" 10 Del.C. § 3724(d).

of the legislature as expressed through it. Accordingly, the Court finds that the statute in effect at the date of death, 10 Del.C. § 3721–3725, applies in the instant case, where the death occurred after the statute's effective date.

## V.

■ Defendants contend that the running of the malpractice statute of limitations, 18 Del.C. § 6856 (1976), nonetheless prohibits the bringing of a wrongful death action at this time. The statute states:

No action for the recovery of damages upon a claim against a health care provider for personal injury, including personal injury which results in death, arising out of malpractice shall be brought after the expiration of 2 years from the date upon which such injury occurred; provided, however, that:

(1) Solely in the event of personal injury the occurrence of which, during such period of 2 years, was unknown to and could not in the exercise of reasonable diligence have been discovered by the injured person, such action may be brought prior to the expiration of 3 years from the date upon which such injury occurred, and not thereafter; and

(2) A minor under the age of 6 years shall have until the latter of time for bringing such an action as provided for hereinabove or until the minor's 6th birthday in which to bring an action.

*Id.* This statute applies to all actions brought after April 26, 1976, 18 Del.C. § 6857, and is thus applicable here.

The legislature passed the statute chiefly to address the "tremendous increase in the cost of liability insurance coverage for health care providers in Delaware." 60 Del.Laws C. 373 (1976). As the Supreme Court of Delaware observed in *Dunn v. St. Francis Hospital:*

the limited extension of the limitations period [in § 6856(1)] ... is intended to give consideration to the problem of an injury which is not physically ascertainable. Such extension further appears directly intended to limit the open-ended aspect of the prior law which provided in the case of an 'inherently unknowable' injury that the applicable period began to run when the injured person became aware of his injury.

401 A.2d 77, 79 (Del.1979), *citing Layton v. Allen,* 246 A.2d 794 (Del.1968).

The legislative history of the statute confirms this conclusion. The report to the Governor of the Delaware Medical Malpractice Commission, which drafted the statute, reads in part: "Section 6856 prescribes the period of time in which a malpractice action must be commenced.... [Its] overall effect will be to eliminate the uncertainty created by the present open-ended period of limitations." Delaware Medical Malpractice Commission, Report to the Governor 3 (Feb. 26, 1976). *See Dunn,* 401 A.2d at 79.

The malpractice statute of limitations is to be construed narrowly. Its enactment "was a response to a particular issue in a particular context ... [T]o construe it broadly without the bounds of that context would emasculate its very purpose." *Dunn,* 401 A.2d at 80. The legislature clearly intended by § 6856 to limit the amount of time after the date of injury that insurers would remain liable for malpractice. The statute of limitations, however, by its terms applies only to "claims against a health care provider *for personal injury,* including *personal injury* that results in death, arising out of malpractice." 18 Del.C. § 6856 (emphasis added).

At the time the legislature enacted the malpractice statute of limitations, the old wrongful death statute was in effect. Wrongful death actions and personal injury actions under the old statute were at once inexorably linked and mutually exclusive. Personal injury actions brought during the deceased's lifetime, then as now, survived the plaintiff's death. 10 Del.C. § 3704(a). A separate, coexisting wrongful death action, however, was unknown.

Although a wrongful death claim under the old statute depended upon the de-

ceased's right of action for personal injury, *Saunders*, 202 A.2d at 809, such a claim under the new statute exists concomitantly with the personal injury claims of the decedent that survive the death. The persons entitled to benefit from a wrongful death claim do not do so in the stead of the decedent, but have an action personal to them which arises only at death. The wrongful death and survival actions are cumulative, not alternative. The two actions do not overlap or result in a duplication of damages. *Cf. Borror v. Sharon Steel Co.*, 327 F.2d 165, 173 (3d Cir.1964) (construing Pennsylvania law).

Section 6856 closed the door to malpractice claims for personal injuries discovered after the malpractice statute of limitations has run. The legislature subsequently opened it for survivors' wrongful death actions. The new wrongful death statute, 10 Del.C. §§ 3721–3725, greatly expands the number of persons who can bring wrongful death actions and the types of damages they can recover. More importantly, it no longer ties survivors' rights of action to the deceased's personal injury claims. The legislature provided no exception in the new wrongful death statute for claims against health care providers. Nothing in that statute indicates the legislature's intent to limit survivors' wrongful death claims against health care providers in the way that 18 Del.C. § 6856 limits the deceased's personal injury claims.

Moreover, in this case the cause of action for wrongful death accrued at the date of death, one year after the expiration of the malpractice statute of limitations. The legislature could not have intended for the statute of limitations to have run before the cause of action accrued. The legislature is presumed not to have intended such an absurd result. *Cf. Opinion of the Justices*, 295 A.2d 718 (Del.1972); *E.I. du Pont de Nemours & Co. v. Clark*, 32 Del.Ch. 527, 88 A.2d 436 (1952).

The Court thus finds that the malpractice statute of limitations, 18 Del.C. § 6856, does not bar a wrongful death action in the instant case.

## VI.

■ Delaware's new wrongful death statute does not expressly state that the personal representative of an estate can bring a wrongful death claim. In a separate memorandum, Defendant Wilmington Medical Center contends that this absence precludes the administratrix here from bringing such a claim. Defendant asserts that, in enacting 10 Del.C. §§ 3721–3725 in 1982, the Delaware General Assembly "adopted" Maryland's wrongful death statute, Md.Cts. & Jud.Proc.Code Ann. §§ 3–901–3–904. It then relies on prior interpretations of the Maryland statute, *Cant v. Bartlett*, 292 Md. 611, 440 A.2d 388, 392 n. 1 (1982); *Biro v. Schombert*, 41 Md.App. 658, 398 A.2d 519 (Md.Ct.Spec.App.1979), *vacated* 285 Md. 290, 402 A.2d 71 (1979), and a statement in *Opinion of the Justices*, 54 Del. 524, 181 A.2d 215 (1962), that "there is a strong presumption that [the Delaware] legislature in adopting the law of [another] State has intended to adopt also the construction of that statute or constitution by the Courts of that state." *Id.* 181 A.2d at 218, to argue that Delaware, like Maryland, prohibits an administrator from bringing a wrongful death action in the current circumstances.

In *Opinion of the Justices*, the Supreme Court of Delaware construed an amendment to the Delaware Constitution. The Delaware Constitution previously had contained no similar provision. At the time of the amendment's adoption, no state but Maryland had a like provision in its constitution. The Delaware amendment tracked the Maryland language nearly word for word. Because of these circumstances, the Justices concluded that interpretation of the Delaware amendment should be guided by relevant Maryland decisions. *Id.*

The wrongful death statute enacted in 1982 is not analogous to the amendment involved in *Opinion*. Delaware has long had a wrongful death statute. The latest version, while similar to Maryland's in language and style, also contains substantial differences. *Compare* 10 Del.C. § 3724(d)

*with* Md.Cts. & Jud.Proc.Code Ann. § 3–904(d)–(e); Md.Cts. & Jud.Proc.Code Ann. § 3–904(g) has a limitations period, 10 Del.C. §§ 3721–3725 has none. At most, the General Assembly can be said to have considered the Maryland statute. The existence of a prior wrongful death statute and the differences between the present Delaware and Maryland statutes lead the Court to find that the Delaware legislature did not "adopt" Maryland's statute, but expressed its own will in writing the Delaware Act.

No Delaware court has yet determined whether an administratrix properly can bring an action under the new Delaware wrongful death statute. The Court accordingly must determine the legislature's intent.

The pertinent part of the statute states: "An action under this subchapter shall be for the benefit of the wife, husband, parent and child of the deceased person." 10 Del.C. § 3724(a). This language contrasts with the old wrongful death statute, 10 Del.C. § 3704(b), which provided that "the widow or widower of any such deceased person, or, if there is no widow or widower, the personal representatives, may maintain an action for and recover damages for the death and loss thus occasioned."

The former statute precluded a personal representative from bringing an action if the deceased's spouse was alive. *Jones v. Pennsylvania R.R.*, 50 Del. 57, 123 A.2d 111 (1956); *Reynolds v. Willis*, 209 A.2d 760 (Del.1965). If no spouse survived, however, the personal representative of the deceased's estate was the proper party to bring suit. *Seth v. Spruenken*, 328 A.2d 143, 145 (Del.Super.Ct.1974).

The current statute does not state so explicitly what persons may sue under it. The Court must then look to the statute as a whole to determine the general intent underlying the particular statutory language. *Cf. E.I. du Pont de Nemours & Co. v. Clark*, 32 Del.Ch. 527, 88 A.2d 436 (1952). In repealing the old statute and enacting a new one in 1982, the General Assembly greatly liberalized Delaware's

law of wrongful death. Nothing in the new statute indicates that the legislature intended to restrict which parties are entitled to bring the action when it expanded the number of persons who benefited under the Act and the types of damages recoverable under it.

The new statute provides that the action be brought *"for the benefit of* the wife, husband, parent and children of the deceased person," 10 Del.C. § 3724(a) (emphasis added), not "by" them. In keeping with the intent of the legislature to expand rights and remedies for wrongful death, the Court finds that actions under the new wrongful death act can be brought either by the personal representative "for the benefit of" the wife, husband, parents, and child of a deceased person or by the named beneficiaries themselves.

The court thus grants Plaintiff's motion to amend her complaints to assert a wrongful death claim under 10 Del.C. §§ 3721–3725 against all defendants. An order will enter in accordance with this opinion.