**KINDLE BUILDING CO., Plaintiff,**

v.

**FORD MOTOR CO., Defendant.**

No. 3:96CV7332.

United States District Court,
N.D. Ohio,
Western Division.

July 2, 1997.

Richard M. Kerger, Daniel F. Marinik, Kerger & Kerger, Toledo, OH, for Plaintiff.

Elizabeth Anne McNellie, Michael D. Dortch, Baker & Hostetler, Columbus, OH, for Defendant.

### Order

CARR, District Judge.

This is an action for indemnification in which plaintiff Kindle Building Co. (Kindle) claims that defendant Ford Motor Company (Ford) should indemnify plaintiff for the breach by Maumee Ford (a Ford subsidiary) of a lease between Kindle and Maumee Ford. Pending are defendant's renewed motion to dismiss or for summary judgment (Doc. 20)

and plaintiff's motion for leave to file an amended complaint. (Doc. 23). For the following reasons, the motion to dismiss shall be granted, and plaintiff's motion to amend its complaint shall be denied.

### Background

Mr. Harry S. Kindle, the former owner of Kindle Ford, Inc., sold his dealership to Ford in 1985, knowing that Ford would establish a "dealer enterprise dealership" (Maumee Ford) in which Ford was to provide the initial capital, personnel, and management. (Doc. 20, Exh.A ¶ 5). The "dealer candidate" (in this case, Mr. Jones, who is not a party to the suit) was to provide a small percentage of the purchase price and acquire increasing ownership via profits earned, with the expectation that he would acquire complete ownership within five years. (*Id.*) Through his entity Kindle Building Co., Mr. Kindle owned the real property on which the dealership was located and leased the property to Maumee Ford. Ford was not a lessee or an indemnitor of the lessee. (Doc. 20, Exh. C). Maumee Ford did not succeed: Mr. Jones, instead of acquiring greater ownership, forfeited his stock, and Ford became the owner of Maumee Ford until it closed in 1989.

Plaintiff alleges that Ford breached the lease because its subsidiary, Maumee Ford, installed a defective underground storage tank. In July, 1986, approximately six months after Maumee Ford began operations, a contractor hired by Maumee Ford removed two underground storage tanks and installed a replacement tank. Thereafter, leakage from this tank lead to plaintiff's damages, which total $280,000.

### Defendant's Motion to Dismiss or for Summary Judgment

■ Plaintiff's entire case is based on piercing the corporate veil: if the veil is not pierced, the case must be dismissed. Defendant moves for summary judgment because plaintiff cannot justify disregarding Maumee Ford as an entity. The Sixth Circuit emphasized the importance of upholding distinctive corporate entities when it stated:

[O]ur analysis begins with the premise that there is nothing illegal or immoral with the well-established legal principle that indi-

viduals can create corporate entities through which to undertake and also to limit risk of personal responsibility for their private enterprises. This scheme encourages commerce and the expansion of trade, and it is difficult to find evil in an institution of such long standing and which finds its lawful use openly accepted and encouraged by jurisdictions throughout the world.

*NLRB v. Fullerton Transfer & Storage Limited, Inc.*, 910 F.2d 331, 342 (6th Cir.1990). The protection of the corporate veil is an accepted institution and should not be pierced without compelling justification.

■ Although no precise standard exists to pierce the corporate veil, the plaintiff must show that the parent corporation: 1) dominates and controls the subsidiary so that it has no mind, will or existence of its own; 2) used that domination to commit fraud, wrong, or other dishonest or unjust acts; and 3) injured the plaintiff. *Bucyrus–Erie Co. v. General Products*, 643 F.2d 413, 418 (6th Cir.1981) (applying Ohio law); *Kuempel Service, Inc. v. Zofko, et al.*, 109 Ohio App.3d 591, 597, 672 N.E.2d 1026 (1996). In this case, summary judgment is appropriate because plaintiff fails to satisfy the second prong: it has not alleged adequately that Ford used Maumee Ford to commit fraud, wrong, or other dishonest or unjust acts.

■ For purpose of this motion Ford will be deemed to have controlled Maumee Ford so that it had no mind, will, or existence of its own and that plaintiff was injured. A reasonable juror could not conclude, however, that Ford used that domination to commit fraud, wrong, or other dishonest or unjust acts. Fraud would require the jury to find that defendant "personally or through others, intentionally caused misrepresentations or nondisclosures, and [that] those misrepresentations or nondisclosures were intended by [defendant] to deceive" plaintiff. *Id.* at 419. In this case, there is no allegation that Ford intentionally caused misrepresentations or nondisclosures or that Ford intentionally deceived plaintiff. Therefore, fraud cannot be established.

■ Without establishing fraud, plaintiff could successfully pierce the corporate veil if it establishes wrong or other dishonest or unjust acts. To find wrong or other dishonest or unjust acts, there must be either little respect for the corporate entity or "extraordinary injustice." *Fullerton Transfer*, 910 F.2d at 340. There is no allegation that Ford, at any time, disregarded the corporate entity, and, even viewing the evidence in a light most favorable to plaintiff, plaintiff's injury does not amount to "extraordinary injustice" that would support piercing the corporate veil. *Cf. Id.*

In *Fullerton*, the Sixth Circuit declined to pierce the corporate veil even though: 1) defendants deliberately undercapitalized the corporation to keep it judgment proof; 2) an executive-defendant did not set aside money for a backpay obligation and did not institute bankruptcy proceedings once financial distress was encountered; 3) the corporation had little income after expenses and paid no dividends; 4) the administrator, acting on behalf of the corporation, committed unfair labor practices that resulted in liability; 5) the executive-defendant personally decided to cease operations; and 6) there was a complete unity of management and ownership, which is inconsistent with the recognition of corporate form. *Id.* at 341. Despite the greater injustice to the plaintiff, and greater personal responsibility of the individual defendants, the Sixth Circuit did not pierce the corporate veil.

In comparison, Maumee Ford was adequately capitalized, apparently ceased operations when appropriate, did not itself install the leaking underground storage tank, which was installed by a contractor, and did not have complete unity of management and ownership. There is no manifest wrong or other dishonest of inequitable conduct; thus, Ford will be protected from these claims by the corporate veil. Because Ford's corporate veil will not be pierced, the motion for summary judgment shall be granted.

### Plaintiff's Motion for Leave to File an Amended Complaint

■ Plaintiff has discovered a recent amendment to the Delaware corporation statute which, according to plaintiff, makes Ford liable for Maumee Ford because Maumee Ford was not properly dissolved. Defendant allegedly did not follow Del.Code Ann. tit. 8 §§ 280–282 (1996), which establish a mechanism for resolving present and future claims against a corporation when winding up its affairs. Plaintiff asserts that Ford's failure to follow this procedure means that Ford should be liable for Maumee Ford's breach. I disagree.

Sections 280 and 281 of the Delaware code are safe harbor provisions which, if followed, provide that directors of a "successor entity" will not be held personally liable to unpaid claimants. *See* Folk, *Delaware General Corporation Law*, § 280.1 (3rd ed.1997). Before these statutes were enacted, no such safe harbor existed. *Id.* Failing to follow these standards does not lead inevitably to personal liability: it merely means that the protection of the safe harbor does not attach.

Section 281(b)[1] is the baseline provision which, according to the Delaware Supreme

---

1. Del.Code Ann. tit. 8 § 281(b) provides:

A dissolved corporation or successor entity which has not followed the procedures described in § 280 of this title shall, prior to the expiration of the period described in § 278 of this title, adopt a plan of distribution pursuant to which the dissolved corporation or successor entity (i) shall pay or make reasonable provision to pay all claims and obligations, including all contingent, conditional or unmatured contractual claims known to the corporation or such successor entity, (ii) shall make such provision as will be reasonably likely to be sufficient to provide compensation for any claim against the corporation which is the subject of a pending action, suit or proceeding to which the corporation is a party and (iii)

shall make such provision as will be reasonably likely to be sufficient to provide compensation for claims *that have not been made known to the corporation or that have not arisen but that, based on facts known to the corporation or successor entity, are likely to arise or to become known to the corporation or successor entity within 10 years after the date of dissolution.* The plan of distribution shall provide that such claims shall be paid in full and any such provision for payment made shall be made in full if there are sufficient funds. If there are insufficient funds, such plan shall provide that such claims and obligations shall be paid or provided for according to their priority and, among claims of equal priority, ratably to the extent of funds legally available therefor. Any remaining funds shall be distrib-

Court, governs every corporation in dissolution not electing to pursue the elective procedure set forth in Sections 280 and 281(a). *In re RegO Co.*, 623 A.2d 92, 97 (Del.Ch.1992). Maumee Ford did not follow the procedures set up in § 280 or § 281(a), so its dissolution falls under § 281(b).

Plaintiff explains how Ford is liable in its reply memorandum:

> Ford contends that the Board of Directors of Maumee Ford, Inc., at the time of dissolution of the corporation, had no reason to believe that plaintiff would ever have a claim against the corporation. (Memorandum in Opposition, pg. 6.) This is precisely the situation Section 281 of the Delaware Statutes was intended to address. As the*In re RegO,* [sic] court noted, "Section 281(b), however goes on to require the corporation to 'make such provision as will be reasonably likely to be sufficient to provide compensation for claims that have not been made known, or that have not arisen, but that, based on facts known to the corporation . . . are likely to arise or to become known. . .' "

(Doc. 29 at 4).

Plaintiff's argument fails to note, however, that § 281(b) was materially different in 1989, when Maumee Ford dissolved. In 1989, § 281(b) stated:

> A dissolved corporation or successor entity which has not followed the procedures described in § 280 of this title shall pay or make reasonable provision to pay all claims and obligations, *including all contingent, conditional or unmatured claims known to the corporation or such successor entity but for which the identity of the claimant is unknown.* Such claims shall be paid in full and any such provision for payment made shall be made in full if there are

sufficient funds. If there are insufficient funds, such claims and obligations shall be paid or provided for according to their priority and, among claims of equal priority, ratably to the extent of funds legally available therefor. Any remaining funds shall be distributed to the stockholders of the dissolved corporation.

Del.Code Ann. tit. 8 § 281(b) (1989) (emphasis added).

■ The 1989 version of § 281(b) does not contain the "likely to arise" language of the current statute: to the contrary, the claims must be known to the dissolving corporation.[2] Plaintiff does not assert that Ford knew of the leaking storage tank at the time of dissolution: merely that it was likely to arise. As such, this condition was not covered under the 1989 statute, so Ford is not liable even if the leak was "likely to arise."

■ A trial court may appropriately assess the legal sufficiency of a contemplated amendment in considering the propriety of granting leave to amend under Fed.R.Civ.P. 15(a) and deny the motion if amendment would be futile. 6 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1487 at 432–433 (1971). The Supreme Court noted in *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), that amendment under Fed.R.Civ.P. 15(a) is favored only when "the underlying facts or circumstances relied upon . . . may be a proper subject of relief." In one case, the Sixth Circuit denied a motion to amend a complaint because the proposed amendment was "on shaky ground" due to "the questionable applicability" of interpleader in the factual setting presented. *Banque de Depots v. National Bank of Detroit,* 491 F.2d 753, 757 (6th Cir.1974). Other circuits have rejected

uted to the stockholders of the dissolved corporation.
(emphasis added).

2. The current statute and the legislative history do not specifically state that it should be applied retroactively, and there is a strong presumption against retroactive application of a statute. *Johnson v. Physicians Anesthesia Service,* 621 F.Supp. 908, 913 (D.Del.1985) ("It is generally recognized that a statute will not be given a retroactive application which affects substantive

rights, at least in the absence of language showing a clear legislative intent to give retroactive effect"); *Eudaily v. Harmon,* 420 A.2d 1175 (Del. 1980); *Price v. All American Engineering Co.,* 320 A.2d 336 (1974) (retroactive effect must be mandated by unmistakable legislative intent); *Monacelli v. Grimes,* 99 A.2d 255 (1953); *State ex rel. James v. Mills,* 57 A.2d 99 (1947) (Retroactive application of a statute, which takes away rights acquired under existing laws, will never be inferred).

706

amendments where the amendment would be futile. *Verhein v. South Bend Lathe, Inc.*, 598 F.2d 1061, 1063 (7th Cir.1979); *Council For Employment and Economic Energy Use v. WHDH Corp.*, 580 F.2d 9, 13 (1st Cir. 1978); *Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive Board*, 542 F.2d 1076, 1085–1086 (9th Cir.1976); *Dell v. Heard*, 532 F.2d 1330, 1334 (10th Cir.1976).

Because plaintiff's proposed amended complaint does not allege wrongdoing under the statute in effect at the time of defendant's dissolution, the amendment would be futile, and plaintiff's motion to amend shall be denied.

### Conclusion

For the foregoing reasons, it is

**ORDERED THAT:**

1) Defendant's motion to dismiss (Doc. 4, renewed in Doc. 20) be, and hereby is, granted; and

2) Plaintiff's motion for leave to file an amended complaint (Doc. 23) be, and hereby is, denied.

**So ordered.**